The STATE of Ohio, Appellee,

v.

MUNIZ, Appellant.

[Cite as State v. Muniz, 162 Ohio App.3d 198, 2005-Ohio-3580.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 85156 and 85157.

Decided July 14, 2005.

---

William D. Mason, Cuyahoga County Prosecuting Attorney, and T. Allan Regas, Assistant Prosecuting Attorney, for appellee.

Britta M. Barthol, for appellant.

---

SEAN C. GALLAGHER, Judge.

{¶ 1} Defendant-appellant, Jose Muniz, appeals his conviction of two counts of attempted abduction. Finding no error in the proceedings below, we affirm.

{¶ 2} The following is a brief description of the facts. Muniz was indicted in three separate cases, which involved three separate victims. In each case, he was charged with one count of attempted kidnapping with a sexual-motivation specification as well as one count of attempted abduction. Prior to trial, the state moved for joinder under Crim.R. 13. The trial court granted the motion, and the three cases were tried together.

{¶ 3} At trial, the testimony revealed that on October 28, 2003, the first victim, a 15–year–old girl, waited at the Regional Transit Authority bus shelter on West 25th and Monroe to take the bus to school. While she was at the shelter, a green minivan pulled up to the curb, and the driver moved over to the passenger seat, leaned out the window, and asked her if she smoked "weed." The driver, later identified as Muniz, was about two and one-half to three feet away from the victim when he reached his arm out and tried to grab her. She was scared and ran home, losing her shoe and notebook on the way. The police and the victim were able to come up with a composite drawing of Muniz. The victim described him as a light-complected Hispanic male in his early twenties, with tightly curled hair, an eyebrow ring, and some type of light mark on his forehead. She also described the minivan as a later model that was dark green with rust spots on the door and curtains on the windows.

{¶ 4} On October 30, 2003, the second victim, an 11–year–old girl, was cutting through a drugstore parking lot to catch up with her cousin at the bus stop on Clark Avenue. A man later identified as Muniz walked toward her and said, "[P]sst, come here." She tried to move away from him, but he moved toward her, reached out his arm, and tried to grab her. She "scooted" away, and again, he moved toward her and tried to grab her. She ran to the bus stop crying. She and her cousin went back to school to call the victim's mother. The victim reported the incident to the school security guard and to a Cleveland police officer. In court, her cousin identified Muniz as the man at the drugstore.

{¶ 5} Later that same day, while at a gas station on the way home from her school, the 11–year–old victim saw Muniz walking down the street and pointed him out to her mother and her sister. Her sister recognized him as the brother of someone she knew. In court, her mother identified Muniz as the person her daughter pointed out that day.

{¶ 6} On November 4, 2003, the third alleged victim, a 16–year–old girl who is the sister of the second victim, testified that Muniz approached her in the hallway of Lincoln West High School and followed her through the building saying, "[P]sst, psst, come here." Frightened, she went back to her classroom and reported the incident to her teacher.

{¶ 7} Cleveland Police Detective Norman Shank discovered that Muniz's brother owned a green minivan matching the first victim's description and that it was accessible to Muniz on the date in question. Further, all three girls picked Muniz out of a photo lineup and made in-court identifications.

{¶ 8} At the Crim.R. 29 hearing, all of the sexual-motivation specifications were dismissed by the court. Also, each attempted kidnapping count was amended to reflect a violation of a different subsection of the Revised Code.

{¶ 9} Muniz, his brother, and his sister testified on his behalf. They denied that the van had ever had curtains on the windows, that Muniz had ever had an eyebrow ring, and that Muniz had driven the minivan during that time. His brother and sister testified that Muniz was at home sleeping during the first incident. Muniz testified that he was probably at Cuyahoga Community College during the second incident and that he was at home at the time of the third incident.

{¶ 10} The jury was instructed by the court to view each incident separately. The jury found Muniz guilty of attempted abduction involving the 15–year–old victim on October 28 and the 11–year–old victim on October 30, and not guilty of the remaining charges. This appeal follows.

{¶ 11} Muniz advances three assignments of error for our review.

{¶ 12} "I. The trial court erred by joining for trial, over the defense objection, CR 446578 and CR 446554."

{¶ 13} In his first assignment of error, Muniz contends that the trial court erred by joining these two cases for trial. Specifically, he argues that there were several differences between the two crimes, including the time of day, the words used, and the fact that one involved a vehicle and the other did not. He argues that there were not enough common features to warrant joinder and therefore he was prejudiced by the joinder.

{¶ 14} Crim.R. 13 allows a court to order two or more indictments tried together if the offenses could have been joined in a single indictment. See, also, R.C. 2941.04. Crim.R. 8(A) provides:

Joinder of offenses. Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged * * * are of the same or similar character, or are based on

the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.

{¶ 15} Generally, the law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged are of the same or similar character, unless joinder would prejudice the defendant. *State v. Lott* (1990), 51 Ohio St.3d 160, 163, 555 N.E.2d 293; Crim.R. 14. Further, it is the defendant who bears the burden of demonstrating prejudice and that the trial court abused its discretion. *State v. Hill*, Cuyahoga App. No. 80582, 2002-Ohio-4585, 2002 WL 2027295.

{¶ 16} The prosecutor may counter the claim of prejudice in two ways. *State v. Franklin* (1991), 62 Ohio St.3d 118, 122, 580 N.E.2d 1, citing *Lott*, supra. The first is the "other acts" test, by which the state can argue that it could have introduced evidence of one offense in the trial of the other, severed offense under the "other acts" portion of Evid.R. 404(B). Id. The second is the "joinder" test, where the state is merely required to show that evidence of each of the crimes joined at trial is simple and direct. Id.; see, also, *State v. Roberts* (1980), 62 Ohio St.2d 170, 175, 405 N.E.2d 247. If the state can meet the joinder test, it need not meet the stricter other-acts test. Id. Thus, an accused is not prejudiced by joinder when simple and direct evidence exists, regardless of the admissibility of evidence of other crimes under Evid.R. 404(B). Id.; see, also, *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959.

{¶ 17} Here, there were three cases joined for trial. Each case involved a young, school-aged girl who was alone. Muniz had allegedly attempted to start a conversation with all three; he attempted to grab two of the three girls; each incident was in close proximity to the others and to his home; all three alleged incidents happened within one week. Therefore, we find that joinder was proper because the crimes were of the same or similar character.

{¶ 18} Moreover, Muniz has failed to demonstrate any prejudice by the joinder. The evidence in each case was simple and direct, involving distinguishable fact patterns. Further, there is no indication from the record that the jury confused the evidence as to the different counts or that the jury was influenced by the cumulative effect of the joinder. In fact, the jury's verdict demonstrates that they considered each charge separately, acquitting Muniz in one case entirely, finding him not guilty as to the two remaining attempted kidnapping charges, and convicting him of only two counts of attempted abduction. See, also, *State v. Boyd*, Cuyahoga App. Nos. 82921, 82922, 82923, 2004-Ohio-368, 2004 WL 171199.

{¶ 19} Accordingly, Muniz's first assignment of error is overruled.

{¶ 20} "II. The evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that appellant was guilty of attempted abduction."

{¶ 21} When an appellate court reviews a record upon a sufficiency challenge, " 'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 22} Muniz was convicted of two counts of attempted abduction under R.C. 2923.02 and 2905.02.

{¶ 23} The attempt statute reads: "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of the offense, shall engage in conduct that, if successful, would constitute or result in the offense." R.C. 2923.02.

{¶ 24} The abduction statute states:

No person, without privilege to do so, shall knowingly do any of the following:

(1) By force or threat, remove another from the place where the other person is found;

(2) By force or threat, restrain the liberty of another person, under circumstances which create a risk of physical harm to the victim, or place the other person in fear.

R.C. 2905.02(A).

{¶ 25} Muniz argues that the state failed to prove that Muniz used force or threats against these two victims.

{¶ 26} Force is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). In *State v. Gregg* (Oct. 26, 1992), Champaign App. No. 91–CA–15, 1992 WL 302438, the court explained: "O.R.C. 2901.01(A) does not provide for any measure of the physical exertion that might constitute force, but instead looks to the purpose for which the physical exertion, however slight, has been employed. If that purpose is to overcome a barrier against the actor's conduct, whether that barrier is in the will of a victim or the closed but unlocked door of a home, the physical exertion employed to overcome the barrier may constitute force." See, also, *State v. Austin*, Montgomery App. No. 20445, 2005-Ohio-1035, 2005 WL 567305; *State v. Johnson*, Cuyahoga App. Nos. 81692 and 81693, 2003-Ohio-3241, 2003 WL 21419631. Furthermore, "force may properly be defined as

'effort' rather than 'violence' in a charge to the jury." *Johnson,* supra, citing *State v. Lane* (1976), 50 Ohio App.2d 41, 45, 4 O.O.3d 24, 361 N.E.2d 535.

{¶ 27} In the first case, Muniz hung out the window and attempted to grab the victim's arm. This act of physical exertion on the part of Muniz is an act of force and is sufficient to sustain a conviction for attempted abduction. In the second case, Muniz moved toward the 11–year–old and attempted to grab her twice. Both acts of physical exertion by Muniz are sufficient to sustain a conviction for attempted abduction. Had Muniz been successful in his attempt to grab either young girl, it would have resulted in an abduction.

{¶ 28} Any rational trier of fact could have found all the essential elements of attempted abduction proven beyond a reasonable doubt.

{¶ 29} Muniz's second assignment of error is overruled.

{¶ 30} "III. Appellant's convictions for attempted abduction were against the manifest weight of the evidence."

{¶ 31} In reviewing a claim challenging the manifest weight of the evidence, we are directed as follows: " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins* (1997), 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.

{¶ 32} Under this assignment of error, Muniz argues that the verdict was against the manifest weight of the evidence because Muniz's witnesses were just as credible as the state's witnesses and because his witnesses verify he was not the perpetrator. Muniz points to the first victim's uncorroborated observations regarding the eyebrow ring and van curtains, which were contradicted by his witnesses, as well as the brief time she had to observe the perpetrator. Also, Muniz argues that the other victim is only 11 years old and saw the perpetrator for only 30 seconds.

{¶ 33} A review of the record reveals that the first victim was able to provide a detailed description of the perpetrator from which a composite drawing was produced. She also provided a detailed description of his minivan that narrowed the search to a certain make and model. This victim later identified Muniz in a photo lineup and in court. Further, Muniz had access to a van matching the victim's description.

{¶ 34} The 11–year–old victim saw Muniz soon after the incident and pointed him out to her mother and sister, who corroborated that Muniz was the one she

had identified. Furthermore, the victim's cousin saw Muniz right after the incident and identified him in court as the person whom the victim had pointed out to her. Finally, the victim picked Muniz out of a photo lineup and made an in-court identification.

{¶ 35} Upon our review, we find that the jury did not clearly lose its way and that substantial evidence existed to find all the elements proven beyond a reasonable doubt.

{¶ 36} Muniz's third assignment of error is overruled.

Judgment affirmed.

CORRIGAN, J., concurs.

McMONAGLE, J., dissents.

CHRISTINE T. McMONAGLE, Judge, dissenting.

{¶ 37} Respectfully, I reach an opposite conclusion from that of my colleagues, and I would vacate the convictions for attempted abduction rendered in this matter.

{¶ 38} While I concur with the majority on the issue of whether it was appropriate to join case Nos. 446578 and 446554 for trial, I would find the evidence in both cases insufficient as a matter of law to sustain a conviction.

{¶ 39} "A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus." *State v. Lett,* 160 Ohio App.3d 46, 2005-Ohio-1308, 825 N.E.2d 1158.

{¶ 40} There were two victims in the cases that were joined for trial. In case No. CR–446578, the victim was a 15–year–old girl. While she was at a bus shelter at West 25th and Monroe Streets, a green van pulled up to the curb, and appellant moved into the passenger seat and asked her whether she "smoked weed" as he reached his arm out the window. There was no other conversation, appellant did not exit the van, he did not touch her, and the encounter took eight seconds.

{¶ 41} In case No. CR–446554, the victim was an 11–year–old girl. On the date in question, she was walking through a Drug Mart parking lot on her way home from school when appellant stood in front of her and said, "[P]sst, come here." He "stuck his hand out, [and] reached out with his hand." He remained in her path, blocking her way, but did not touch her. She ran from him and he did not chase her.

{¶ 42} In returning guilty verdicts on attempted abduction, the jury thereby found that appellant attempted "without privilege to do so, * * * [to] knowingly * * * [b]y *force or threat,* restrain the liberty of [the victims] under circumstances which create[d] a risk of physical harm to [the victims], or place[d] [the victims] in fear." (Emphasis added.) R.C. 2905.02(A)(2). In this matter, there is not, by word or deed, an iota of evidence of the use of force or threat, or of an attempt to restrain. Rather, in regard to the 15–year–old girl, the testimony was that appellant only reached his arm out of the van and asked her whether she "smoked weed." In regard to the 11–year–old girl, the evidence of attempted restraint is, at best, equivocal; the victim *perceived* that appellant was blocking her path.

{¶ 43} In sum, abduction requires use of force or threat to remove another from where he or she is found or to restrain another. Appellant neither removed nor restrained the girls. Appellant made no threats to the girls and did not use force upon them. Appellant did not exhibit any weapons, and at no time did he have any physical contact with the girls. Further, when the girls ran, appellant did not follow them.

{¶ 44} R.C. 2923.02(A) provides:

{¶ 45} "No person * * * shall engage in conduct which, if successful, would constitute or result in the offense."

{¶ 46} The state failed to show either force or threat of force directed toward abduction or that the conduct of appellant, if successful, would have resulted in abduction. Appellant's conduct cannot be characterized as either actual use of force for abduction, which was unsuccessful, or as action that, if completed, would have resulted in forceful abduction. Thus, I would hold that the state failed to prove force, threat of force, *and* an attempt to abduct—all essential elements of the crime. *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132.

{¶ 47} It is tempting in these times to see kidnapping, rape, and murder in every adult-stranger/child encounter. Parents and schools responsibly educate children to the potential dangers of these encounters and teach them means of protecting themselves. Both girls in this case clearly responded responsibly and wisely, as no doubt they had been instructed when confronted with a suspicious or threatening situation—they ran and told an adult. But a situation that might

involve danger is not an attempted anything.  I have a hunch that appellant was up to no good.  But this is a hunch based upon my personal fears and not the objective facts of this case.

{¶ 48} It is said that "hard cases make bad law."  So does fear.  I would vacate these convictions.