{¶ 72} Respectfully, I dissent. I would hold the evidence insufficient as a matter of law to support a conviction. I would also hold the exclusion of appellant from the voir dire hearing regarding the victim's identification of him, which was *Page 22 
conducted in closed chambers, over appellant's objection, violative of the Confrontation Clauses of both the United States and Ohio Constitutions. Finally, I would hold that conducting the voir dire hearing in closed chambers violated both the First and Sixth Amendments to the United States Constitution.
 {¶ 73} The facts are both simple and straightforward. The victim, a sixteen-year-old high school sophomore at Glenville High School, was waiting for a bus at the corner of her street. A black Jeep Cherokee with heavily tinted windows and white lettering on the side pulled past her in the curb lane, turned into a nearby church parking lot and parked next to a dumpster. When she turned to look, the car was parked "perhaps the length of a jury box" away. A male voice from inside the car asked "can you come talk to me?" and the victim responded "no." Again from the car, a man's voice asked if the victim would "come talk to him?" Again she replied "no." He said he could "put money into [her] pocket." A male then exited the Jeep. The victim said that this was the first time that she saw him. She testified that "[w]hen I seen him, when he said that, I was trying to run to my left and he like ran that way, too, so I turned around and ran in the street around the shelter out there and I started running down my street and then I turned around and I seen the truck going towards Collinwood way, down the street real fast." She ran back to her home and the man in the Jeep drove off in the opposite direction.
 {¶ 74} There was no testimony that the man touched the victim, or that he even tried to touch her. The victim testified throughout direct and cross-examination that, *Page 23 
that, during the entire time the man was out of the car, his arms were down at his side. While the majority construes the victim's limited testimony as constituting a "chase," I find such conclusion hyperbole. The victim was clear that when she turned to run in a direction opposite of the man, he got back in his car and sped off in a direction away from her. There was nothing in her testimony that connected him with an attempt to remove her from where she was found or to restrain her of her liberty.
 {¶ 75} The indictment read as follows: Steve Nolan, on March 11, 2005"attempted by force, threat, or deception, under circumstances whichcreated a substantial risk of serious physical harm to S.M.,[2] toknowingly remove S.M. from the place where she was found and/or restrainher of her liberty." (Emphasis added.) The evidence in this case reveals no attempt at force, no threat and no deception. There is further no evidence whatsoever of an attempt to cause any sort of harm, let alone serious physical harm. Likewise the transcript contains no evidence of an attempt to remove or to restrain the victim. What might have happened to the victim had she gone over to the man as he requested, I do not know. I do know that it is legally impermissible to fill in evidentiary gaps with our imaginings of worst-case scenarios.
 {¶ 76} In a case similar to this one, State v. Muniz,162 Ohio App.3d 198, *Page 24 2005-Ohio-3580, 832 N.E.2d 1279, I dissented as follows:
 {¶ 77} "It is tempting in these times to see kidnapping, rape and murder in every adult-stranger/child encounter. Parents and schools responsibly educate children to the potential dangers of these encounters, and teach them means of protecting themselves. Both girls in this case clearly responded responsibly and wisely, as no doubt they had been instructed when confronted with a suspicious or threatening situation — they ran and told an adult. But a situation that might involve danger is not an attempted anything. I have a hunch appellant was up to no good. But this is a hunch based upon my personal fears and not the objective facts of this case." Id. at 207-208 (McMonagle, J., dissenting). I would vacate this conviction upon the same reasoning.
 {¶ 78} Moreover, even if this conviction is not vacated, it should be reversed and remanded to the trial court due to violation of appellant's constitutional right to confrontation. As is evident from the facts stated above, the man in the Jeep was a stranger to the victim. During almost all of the incident that give rise to this indictment, the man who approached the victim was in a car with heavily tinted windows, and by the victim's own testimony, unable to be seen by her. The only opportunity she had to witness the man was when he exited the car, and she was clear that when he did that, she ran. Hence, identification is significant and seminal in this matter. The victim was able to describe the man as follows:
 {¶ 79} "Q. This person — when he got out of the truck, what was this person *Page 25 
wearing?
 {¶ 80} "A. A brown jacket, a blue shirt, a blue cap. Blue jeans and blue boots.
 {¶ 81} "Q. Blue boots?
 {¶ 82} "A. Yes.
 {¶ 83} "Q. Like what kind of boots?
 {¶ 84} "A. Timberland.
 {¶ 85} "* * *.
 {¶ 86} "Q. Describe the person's physical features, what were they?
 {¶ 87} "A. He had a goatee with a mustache and the beard connected.
 {¶ 88} "Q. Okay.
 {¶ 89} "A . And he was dark skinned and he really didn't have no hair."
 {¶ 90} As already mentioned, the victim was further able to describe the fact that the man's Jeep was black with heavily tinted windows and white lettering on the side.
 {¶ 91} The identification of appellant was made in a line-up conducted at the police station. After the victim identified appellant from the line-up, she fled, upset, from the room. Because of this fact (i.e., the victim being upset at the line-up), the State asked for and received permission from the court to conduct a voir dire of the victim in the court's chambers and outside the presence of appellant. Appellant objected to the procedure, citing his rights under the Confrontation Clause; the *Page 26 
objection was overruled, and the hearing took place in closed chambers and without appellant's presence.
 {¶ 92} The right of a defendant to be present during criminal proceedings arises from both the Confrontation Clause of theSixth Amendment and the Due Process Clause of the Fifth Amendment to the United States Constitution. In Lewis v. United States (1892),146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011, the United States Supreme Court reviewed this most fundamental of rights and clearly and succinctly stated: "A leading principle that pervades the entire law of criminal procedure is that, after indictment is found, nothing shall be done in the absence of the prisoner." Id. at 372. The court then went on passionately to state that the exclusion of the defendant from part of the proceedings is `"contrary to the dictates of humanity.'" Id., quoting Prine v. The Commonwealth (1851), 18 Pa. 103. This remains good law today. In Joint Anti-Fascist Refugee Commt. v. McGrath (1951),341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817, Justice Felix Frankfurter in his concurring opinion noted that "the plea that evidence of guilt must be in secret is abhorent to free men." Id. at 170 (Frankfurter, J., concurring).
 {¶ 93} While time has dictated some refinement to the concept of the right to confront one's accusers, the cumulative effect of these refinements is that the defendant has the right to be present at all "important stages" of the proceedings, Diaz v. United States (1912),223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500, where he does not voluntarily absent himself, or absent himself by way of his own *Page 27 
misbehavior.[3] It goes without saying that the direct and cross-examination of the only eyewitness at a voir dire hearing concerning identification procedures is a most, if not the most, important stage of the proceeding.
 {¶ 94} Violation of a defendant's right to confrontation is reviewed by harmless error analysis, i.e., it must be proven beyond a reasonable doubt that, but for the error, the result of the trial would not have been different. Lilly v. Virginia (1999), 527 U.S. 116, 119 S.Ct. 1887,144 L.Ed.2d 117; see, also, State v. Troupe (Mar. 30, 2000), Cuyahoga App. No. 76113. Because identification was the seminal issue in this case, I cannot say that this error was harmless beyond a reasonable doubt, and, accordingly, I would reverse upon that ground.
 {¶ 95} Finally, appellant complains that recessing the hearing to chambers upon the request of the prosecution deprived him of his right to an open and public trial, and upon this allegation I, too, agree. The ground stated by the prosecutor to justify the closed hearing-that the victim was frightened at the line-up conducted months earlier-was baseless. Absolutely nothing untoward occurred at the line-up, according to the testimony of everyone. Nothing occurred in the courthouse or its environs. There was no testimony whatsoever that anyone intimidated or attempted *Page 28 
to intimidate anyone. The victim herself did not claim to be intimidated. While the prosecutor argued that the action was necessary "in order to accommodate the potential intimidation of the witness," the record is utterly devoid of any evidence, or even allegations of intimidation, attempted or otherwise. Waller v. Georgia (1984),467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed2d 31. In State v. Drummond,111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, cited by the majority, not only was there a full hearing on the issue of closure and substantial reasons propounded for closure, but most importantly, the media was specifically not excluded from the otherwise closed proceedings. It must always be remembered that the right to a public trial implicates not only theSixth Amendment, but also the First Amendment. See Globe Newspaper Co.v. Superior Court (1982), 457 U.S. 596, 602-603, 610-611, 102 S.Ct 2613,73 L.Ed.2d 248. The right to a public trial is "designed to ensure fairness
to the defendant, maintain public confidence in the criminal justice system, provide a community outlet for community reaction to crime, ensure that judges and prosecutors fulfill their duties responsibly, encourage witnesses to come forward, and discourage perjury." 35 Geo. L.J. Ann. Rev. Crim. Proc. 609 (2006). The majority overrules this allegation of error because the closed hearing allegedly did not affect the "fairness, integrity or public reputation of the trial." I would find, however, that a closure that did not comport with any of the requirements of Waller,[4] supra, indeed *Page 29 
supra, indeed affects the fairness, integrity and public reputation of the trial.
 {¶ 96} While I write in dissent to the majority's holding on the issue of public trial, I note that the remedy, which would be to remand the case to the trial court for a public voir dire only, would be, at this juncture of the proceedings, a mere formality. I write separately on this issue only to make clear that the action of the trial court in closing the hearing without conforming to the requirements in Walleris, in fact, error.
[2] It is the policy of this court not to publish the name of minors in opinions. At the time of the trial, the alleged victim was 17 years of age.
[3] In Kentucky v. Stincer (1987), 482 U.S. 730, 744, 107 S.Ct. 2658,96 L.Ed.2d 631, it was held permissible to exclude the defendant from an in-chambers meeting between counsel, the judge and a juror, over concerns regarding sketches of the jury members being made by the defendant. Further, the defendant may, in certain cases, waive his right to be present by voluntarily absenting himself, Taylor v.United States (1973), 414 U.S.17, 19, 94 S.Ct. 194, 38 L.Ed.2d 174, or by continual disruptions after warning, Illinois v. Allen (1970), 397 U.S.337, 345-346, 90 S. Ct. 1057, 25 L.Ed.2d 353.
[4] Where closure is sought, the court must make specific findings on the record delineating a compelling interest in closure. The court must consider more transparent alternatives and must balance the closure against First Amendment interests. If closure is warranted, the court must devise an order narrowly tailored to serve the interest being protected by the closure. *Page 1