OPINION *Page 2 
{¶ 1} Appellant, Reginald Lindsay, appeals his conviction and sentence for one count of Breaking and Entering, in violation of R.C. § 2911.13(A), a felony of the fifth degree. The trial court sentenced appellant to 11 months confinement at the Orient Reception Center.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On January 20, 2006, appellant was arrested for stealing a kerosene heater out of a wooden shed located in the backyard of home owned by a Justina Wilson. From her back window, Ms. Wilson witnessed appellant open the shed doors, enter the shed and remove the heater. She observed appellant place the heater in a grocery cart and leave the yard. She called the police. Officers quickly found and detained appellant about a block away as he was pushing the grocery cart with the heater. Appellant first stated to the officers that he found the heater in the trash, and then he admitted he took it out of a shed but the shed doors were open. The police did not obtain any fingerprints from the wooden shed doors. Ms. Wilson further testified that the shed doors were closed but unlocked.
 {¶ 3} On January 27, 2006, appellant was indicted by the Licking County Grand Jury for one count of Breaking and Entering in violation of R.C. § 2911.13(A), a felony of the fifth degree, and one count of Possession of Drug Paraphernalia in violation of R.C. § 2925.14(C)(1), a misdemeanor of the fourth degree.
 {¶ 4} The criminal offense of Breaking and Entering is set forth in R.C. 2911.13 (A) as: "No person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense, as defined in *Page 3 
section 2913.01 of the Revised Code, or any felony; * * * (C) Whoever violates this section is guilty of breaking and entering, a felony of the fifth degree."
 {¶ 5} The matter was tried before a jury on April 28, 2006. During trial, appellant's counsel questioned the police about failing to take fingerprints from the shed. The officers involved testified that they did not take fingerprints from the shed. At the end of the State's case, appellant's counsel made a Criminal Rule 29 motion for acquittal, which the Court denied. At the conclusion of testimony, the case was given to the jury. The jury found appellant guilty of the Breaking and Entering offense. The State then requested a dismissal of the Possession of Drug Paraphernalia charge and the trial court granted the motion. The trial court then sentenced the appellant to 11 months in prison.
 {¶ 6} It is from this conviction and sentence that appellant appeals and raises the following three assignments of error:
 ASSIGNMENTS OF ERROR {¶ 7} "I. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.
 {¶ 8} "II. THE TRIAL COURT ERRED WHEN IT INCORRECTLY PROVIDED THE BURGLARY DEFINITION OF STEALTH JURY INSTRUCTION.
 {¶ 9} "III. THE TRIAL COURT ERRED WHEN IT SENTENCED THE DEFENDANT PURSUANT TO AN UNCONSTITUTIONAL STATUTE."
 I. {¶ 10} In his first assignment of error, appellant claims that he was denied the effective assistance of trial counsel. *Page 4 
 {¶ 11} The standard of review of an ineffective assistance of counsel claim is well-established. Pursuant to Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 673, in order to prevail on such a claim, the appellant must demonstrate both (1) deficient performance, and (2) resulting prejudice, i.e., errors on the part of counsel of a nature so serious that there exists a reasonable probability that, in the absence of those errors, the result of the trial court would have been different. State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373.
 {¶ 12} First, we must determine whether counsel's assistance was ineffective, i.e., whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. As stated above, this requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. Id. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie (1998), 81 Ohio St.3d 673, 675,693 N.E.2d 267.
 {¶ 13} Appellant first claims his trial counsel was ineffective because he failed to obtain expert testimony as to 1) whether or not physical damage had been done to the shed, or 2) whether the appellant's fingerprints existed on the shed. At trial, defense counsel went to great lengths to show the police failed to obtain fingerprints from the shed. He questioned each officer involved on this issue. Each officer denied taking *Page 5 
fingerprints from the shed. Trial Tr. p. 50, p. 58 and p. 73. A police officer also testified as to the difficulty of taking fingerprints from a wooden surface. Trial Tr. p. 59.
 {¶ 14} It is well established that counsel's decisions concerning which witnesses to call at trial fall within the realm of trial strategy and tactics and generally will not constitute ineffective assistance of counsel. State v. Smith (1996), 115 Ohio App.3d 419, 426.
 {¶ 15} Arguably, fingerprint evidence can cut both ways. This type of evidence may not have been exculpatory to appellant. It is also clear from the record that it was defense counsel's strategy to establish the lack of a thorough police investigation, to create reasonable doubt by this missing evidence and to let the case hinge on the credibility of victim and the appellant. Therefore, we cannot conclude that the defense counsel's failure to obtain any potential fingerprint evidence amounted to ineffective legal representation.
 {¶ 16} Appellant further alleges trial counsel should have called an expert witness to contest the "force" element of the offense. However, expert testimony was not necessary for two reasons. First, one of the police officers already had testified on cross-examination that there was no sign of forced entry on the shed. Trial Tr. p. 71. There was no need for the defense to present additional, let alone expert testimony, on this issue. Secondly, the prosecution can establish the "force" element of the charged offense without the need for the State to prove that any damage occurred. State v. Muniz (2005) 162 Ohio App. 3d 198;State v. Lane (1976) 50 Ohio App.2d 41. "Force" can include the effort necessary to open an unlocked door. Muniz, at ¶ 26, citation omitted. *Page 6 
 {¶ 17} Appellant next faults his trial counsel's failure to timely object to certain evidence, to wit: two unauthenticated photographs of a BB gun and sander. Allegedly, these items were also taken from the shed. Defense counsel first raised the issue of the additional items upon cross-examination of the victim, Ms. Wilson. Trial T. p. 85. Therefore, defense counsel opened the door for the prosecution to question the witness and introduce the photographs of the items on re-direct of Ms. Wilson. Trial T. p. 86-88. It is clear from the record that defense counsel did not object to the photographs at that time. Defense counsel then further questioned the witness about the items in the photographs on re-cross examination. Trial T. p. 91-92. Clearly, testimony regarding the additional items was first sought by defense counsel, and then the photographs were used by the defense in trying to establishing its theory that Ms. Wilson did not see appellant the whole time he was in the backyard, possibly removing other items. Trial Tr. p. 92-93. Therefore, there can be no claimed error in failing to object to the photographs of the items or any resulting prejudice based upon defense counsel's trial strategy to explore this area in his examination of Ms. Wilson.
 {¶ 18} Finally, appellant criticizes his trial counsel for failing to make a Crim. R. 29(C) motion for acquittal after the verdict. First, it should be noted that defense counsel made a Crim. R. 29(A) motion for acquittal at the close of the State's case-in-chief. Trial Tr. p. 95 and p. 96. The trial court denied the motion and made a determination that the case should go to the jury. Trial Tr. p. 96. Defense counsel did not renew the motion at the close of all the evidence or after the verdict.
 {¶ 19} Crim. R. 29(C) provides, in pertinent part: *Page 7 
 {¶ 20} "If a jury returns a verdict of guilty * * * a motion for judgment of acquittal may be made or renewed within fourteen days after the jury is discharged or within such further time as the court may fix during the fourteen day period. If a verdict of guilty is returned, the court may on such motion set aside the verdict and enter judgment of acquittal."
 {¶ 21} Criminal Rule 29(A) states that the trial court shall enter a judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses". The trial court applies the same standard in ruling on motions for acquittal presented either at trial or made after judgment pursuant to Crim. R. 29(C). State v.Miley (1996), 114 Ohio App.3d 738.
 {¶ 22} A judgment of acquittal is inappropriate "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman (1978, 55 Ohio St.2d 261, syllabus. When an appellate court reviews a trial court's decision regarding a motion for acquittal, the appellate court must construe the evidence in a light most favorable to the State. Further, upon appellate review, the court may not substitute its judgment for the trier of fact on issues as to the credibility of the witness testimony. State v. Walker (1978),55 Ohio St.2d 208, 212.
 {¶ 23} In this case, the jury obviously chose to believe the testimony of the victim, Ms. Wilson, over appellant's testimony. This case hinged on witness credibility. A motion for acquittal had already been overruled. We conclude, on the state of this record, that appellant has failed to demonstrate his trial attorney's conduct in failing to *Page 8 
move for acquittal after the jury verdict was rendered was either ineffective or prejudicial.
 {¶ 24} Appellant's First Assignment of Error is overruled.
 II. {¶ 25} In his second assignment of error, appellant claims the trial court incorrectly charged the jury with the definition of "stealth" as set forth in the burglary statute. The trial court instructed the jury as follows:
 {¶ 26} "Stealth. Stealth means any secret, sly or clandestine act to gain entrance.
 {¶ 27} "Stealth further explained. You are further instructed that you may but need not find that a person who enters a structure, even one where the door is open, may be found to have entered by stealth if it appears that the person made no effort to — to make contact with any potential residents that may have been at the premises." Trial Tr. p. 136.
 {¶ 28} The trial court adopted this definition from the State's proposed jury instruction.
 {¶ 29} Appellant argues breaking and entering by statute involves an unoccupied structure. Therefore, appellant contends "requiring the Appellant to overcome the necessity of having to make contact with a potential resident at an unoccupied structure would necessarily result in his conviction, as there are no residents to contact."Appellant's Brief, p. 14. Appellant concedes no objection was made by defense counsel to the stealth instruction.
 {¶ 30} The failure to object to a jury instruction constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would *Page 9 
have been otherwise. State v. Underwood (1983) 3 Ohio St.3d 12,444 N.E.2d 1332, at syllabus. The "plain error rule" should be applied with utmost caution and should be invoked only to prevent a clear miscarriage of justice. Id. at 14.
 {¶ 31} In the case sub judice, defense counsel failed to object to the jury instruction on stealth. Accordingly, appellant has waived any possible error unless we determine plain error existed which would have resulted in appellant's acquittal.
 {¶ 32} Even assuming, without ruling, that the stealth jury instruction was in error, there was sufficient evidence to find appellant guilty of breaking and entering by use of "force", as opposed to "stealth", as the victim, Ms. Wilson testified she observed appellant open the closed shed door and retrieve the kerosene heater. As noted earlier, the jury chose to believe her testimony over appellant's version of events. This testimony alone would warrant a jury finding appellant guilty of breaking and entering under the instruction of force. Therefore, we decline to apply the plain error rule.
 {¶ 33} Appellant's Second Assignment of Error is overruled.
 III. {¶ 34} In his third assignment of error, appellant claims the trial court sentenced him pursuant to an unconstitutional statute, R.C. 2929.14(C).
 {¶ 35} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856,845 N.E.2d 470, the Ohio Supreme Court held that R.C. § 2929.14(C), which governed maximum prison terms, is unconstitutional and severed that statutory provision from Ohio's felony sentencing scheme. R.C. § 2929.14(C) stated:
 {¶ 36} "The court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this *Page 10 
section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
 {¶ 37} In holding that section unconstitutional, the Ohio Supreme Court stated:
 {¶ 38} "We have consistently held that R.C. 2929.14(C) requires that specific findings be made before a maximum sentence is authorized. * * * As it stands, R.C. 2929.14(C) creates a presumption to be overcome only by judicial fact finding. It does not comply with Blakely." Foster
at ¶ 64.
 {¶ 39} Appellant was sentenced in the post-Foster era. In State v.Firouzmandi, Licking App. No. 2006-CA-41, 2006-Ohio-5823, this Court concluded that post-Foster, an appellate court reviews the imposition of sentences under an abuse of discretion standard. Id. at ¶ 40. An abuse of discretion implies the court's attitude is "unreasonable, arbitrary or unconscionable." See State v. Adams (1980), 62 Ohio St.2d, 151, 157. Additionally, post-Foster, trial courts are still required to "consider" the general guidance factors contained in R.C. § 2929.11 and R.C. § 2929.12 in their sentencing decisions. See State v. Diaz, Lorain App. No. 05CA008795, 2006-Ohio-3282, ¶ 8.
 {¶ 40} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856,845 N.E.2d 470, the Ohio Supreme Court held that R.C. § 2929.14(C), which governs maximum prison terms, does not comply with Blakely and is therefore also unconstitutional. R.C. § 2929.14(C) states: *Page 11 
 {¶ 41} In the case sub judice, the trial court used pre-Foster factors in explaining the sentence:
 {¶ 42} "Based on the facts and circumstances in this case, given the prior criminal history of the defendant you scared the heck out of Mrs. Wilson by your conduct. The Court determines that the appropriate sentence in this case is 11 months at the Correction Reception Center. I do not find that it is the worst form of the offense, which would be necessary for the 12 months." Trial Tr. at p. 158.
 {¶ 43} The court used the "worst forms of the offense" language directly out of R.C. § 2929.14(C), a statute held unconstitutional underFoster. Under Foster, the trial court could sentence the Appellant to a range of six (6) months to twelve (12) months. This Court stated in dicta in State v. Goggans, Delaware App. No. 2006CA070051, 2207-Ohio-1433:
 {¶ 44} "The court could have imposed the maximum sentence without making any statement on the record. The fact that the trial judge explained his reasons for imposing the maximum sentence on the record cannot transform a sentence within the ranges provided by statute into a constitutionally infirm sentence on the grounds that the statements constitute impermissible `judicial fact-finding.'"
 {¶ 45} Accordingly, the mere fact that the trial court used language from R.C. § 2929.14(C) to explain a sentencing decision does not affect the sentence of Appellant.
 {¶ 46} This Court does not find the use of this language to be unreasonable, arbitrary or unconscionable.
 {¶ 47} Appellant's Third Assignment of Error is overruled. *Page 12 
 {¶ 48} The judgment of the Court of Common Pleas of Licking County is affirmed.
 Delaney, J., Gwin, P.J. and Hoffman, J., concur. *Page 13 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas is affirmed. Costs assessed to the appellant. *Page 1