[Cite as *State v. Krupa*, 2010-Ohio-6268.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | CASE NO. 09-MA-135 |
| | ) | |
| GUY KRUPA, | ) | OPINION |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:      Criminal Appeal from Court of Common
                               Pleas of Mahoning County, Ohio
                               Case No. 09CR651

JUDGMENT:                      Affirmed

APPEARANCES:
For Plaintiff-Appellee          Paul Gains
                                Prosecutor
                                Ralph M. Rivera
                                Assistant Prosecutor
                                21 W. Boardman St., 6th Floor
                                Youngstown, Ohio 44503-1426

For Defendant-Appellant         Attorney Lynn Maro
                                7081 West Boulevard, Suite 4
                                Youngstown, Ohio 44512


JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite



                                Dated: December 17, 2010

DONOFRIO, J.

{¶1} Defendant-appellant, Guy Krupa, appeals from a Mahoning County Common Pleas Court judgment convicting him of attempted abduction, following a jury trial, and the resulting sentence.

{¶2} At approximately 3:30 p.m. on April 13, 2009, 14-year-old B.S. was walking down Southern Boulevard on her way to a friend's house. While en route, B.S. encountered appellant. Appellant was driving north on Southern Boulevard when he noticed B.S.. According to appellant, B.S. appeared troubled. He pulled over to the side of the road and asked B.S. if she was ok and if she needed a ride. B.S. told him she did not need a ride. According to B.S., appellant then pulled into the grass in front of her in an attempt to cut off her path and told her to get into the "f-ing" car. She stated he did this twice and she refused. B.S. stated that another car driven by Kathryn White then pulled up and appellant drove away. According to White, she noticed that B.S. appeared to be afraid of appellant as she had watched the exchange between B.S. and appellant. She followed appellant when he drove away, wrote down his license plate number, and called the police.

{¶3} A Mahoning County grand jury indicted appellant on one count of attempted abduction, a fourth-degree felony in violation of R.C. 2905.02(A)(1)(B) and R.C. 2923.02(A). With the court's permission, plaintiff-appellee, the State of Ohio, later amended the charge to a violation of R.C. 2905.02(A)(1)(C), also a fourth-degree felony.

{¶4} The matter proceeded to a jury trial on July 13, 2009. At the close of the state's case, appellant moved for a judgment of acquittal, which the court denied. The jury returned a guilty verdict.

{¶5} Appellant filed a motion for judgment of acquittal or, in the alternative, for a new trial. He alleged that the evidence was insufficient to sustain a conviction. Specifically, appellant asserted that the state failed to prove that he acted purposely or that he used force or the threat of force to attempt to remove the victim from the place where she was found. The trial court denied the motion.

{¶6} The court subsequently sentenced appellant to 12 months in prison.

**{¶7}** Appellant filed a timely notice of appeal on August 14, 2009. After a denied request in the trial court, this court granted appellant a stay of execution of his sentence pending this appeal.

**{¶8}** Appellant raises three assignments of error, the first of which states:

**{¶9}** "APPELLANT'S CONVICTIONS ARE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND THE TRIAL COURT ERRED IN OVERRULING THE MOTIONS FOR ACQUITTAL PURSUANT TO OHIO CRIM.R. 29."

**{¶10}** Appellant argues that the evidence was insufficient to support his conviction. He points out that he never left his vehicle, there was no evidence of a threat of force, and he never used any force. Appellant asserts that even taking B.S.'s testimony as true, the most that occurred was that he told her to get into the "f-ing car" and then she walked away.

**{¶11}** Crim.R. 29(A) provides that, "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."

**{¶12}** An appellate court reviews a denial of a motion to acquit under Crim.R. 29 using the same standard it uses to review a sufficiency of the evidence claim. *State v. Rhodes,* 7th Dist. No. 99-BA-62, 2002-Ohio-1572, at ¶9; *State v. Carter* (1995), 72 Ohio St.3d 545, 553.

**{¶13}** Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith* (1997), 80 Ohio St.3d 89, 113. In essence, sufficiency is a test of adequacy. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational

trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith,* 80 Ohio St.3d at 113.

{¶14} Appellant was convicted of attempted abduction in violation of R.C. 2905.02(A)(1) and R.C. 2923.02(A). The abduction statute provides:

{¶15} "(A) No person, without privilege to do so, shall knowingly do any of the following:

{¶16} "(1) By force or threat, remove another from the place where the other person is found." R.C. 2905.02(A)(1).

{¶17} And the attempt statute states:

{¶18} "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." R.C. 2923.02(A).

{¶19} A criminal attempt occurs when one purposely does or omits to do something that is an act or omission constituting a substantial step in a course of conduct planned to result in the commission of a crime. *State v. Woods* (1976), 48 Ohio St.2d 127, paragraph one of syllabus, overruled in part on other grounds by *State v. Downs* (1977), 51 Ohio St.2d 47, 52. "To constitute a substantial step, the conduct must be strongly corroborative of the actor's criminal purpose." Id.

{¶20} The evidence at trial was as follows.

{¶21} B.S. testified that as she was walking in the grass between the road and the railroad tracks on Southern Boulevard she noticed an SUV beeping at her. (Tr. 35-37). She stated that the driver of the SUV, later identified as appellant, rolled down his window and asked her if she needed any help. (Tr. 38). B.S. responded, "No, thank you." (Tr. 38). B.S. stated that appellant then pulled up into the grass in front of her trying to cut her off. (Tr. 38-39). He then told her twice to get into the "f-ing" car. (Tr. 39-40). B.S. testified that she tried to go a different away around appellant's vehicle but he backed up and tried to cut her off again. (Tr. 41). She then jogged away from him. (Tr. 41). B.S. stated she thought appellant was going to hurt her. (Tr. 42). Finally, B.S. testified that White pulled up and scared appellant

away. (Tr. 43). B.S. testified that during the incident, appellant only opened his window. (Tr. 50).

{¶22} White testified that she was driving north on Southern Boulevard when the SUV in front of her (appellant's SUV) started braking. (Tr. 64). She then noticed B.S.. (Tr. 64). White stated that the SUV veered into the grassy median and stopped in front of B.S.'s path. (Tr. 65-66). White testified that B.S. appeared startled and immediately moved away from the SUV. (Tr. 66-67). She then observed appellant motioning to B.S. to come over to him and B.S. responded negatively to him. (Tr. 67-68). She could hear appellant yelling and B.S. saying "no." (Tr. 69). White testified that appellant then opened his passenger-side door and motioned for B.S. to get in. (Tr. 70, 84). White stated that appellant motioned to her to pull her car around his but she remained behind him. (Tr. 71). She stated that appellant then swore and took off in front of her. (Tr. 71).

{¶23} White testified that she followed appellant to a house where she wrote down his license plate number. (Tr. 72). She then went back to the area where B.S. was. (Tr. 73). White stated that B.S. was now with her friend. (Tr. 74). She stated B.S. was crying and upset. (Tr. 74). After learning that B.S. did not know appellant, White called the police. (Tr. 74-75).

{¶24} Contrary to B.S.'s testimony, White was unequivocal that appellant opened the passenger-side door. (Tr. 70, 84). White also testified that once appellant pulled up into the median, he never moved his car until he pulled back onto the road. (Tr. 84-86, 95-96). She stated that appellant could not have backed his car up because he would have hit her car. (Tr. 84-85).

{¶25} Officer Joseph O'Grady responded to White's call. He stated that when he arrived on the scene, B.S. was trembling and was very fearful. (Tr. 101). He took statements from both B.S. and White. (Tr. 115). Officer O'Grady testified B.S. did not tell him that appellant used a swear word during the incident. (Tr. 116). And he testified White did not report that appellant opened the car door. (Tr. 117).

{¶26} Detective Sergeant Doug Flara testified that when he questioned appellant, appellant reported that he stopped and talked with B.S. because she appeared to be in distress. (Tr. 140). He told Detective Flara that he offered assistance. (Tr. 141). Appellant further told the detective that he asked B.S. if she needed a ride and offered to give her one. (Tr. 141).

{¶27} Finally, appellant testified in his defense. He stated that he was driving down Southern Boulevard when he noticed B.S. walking by the railroad tracks. (Tr. 170). He stated that she appeared to be talking to the railroad tracks and pointing. (Tr. 171). Appellant stated that he wondered if she was mentally challenged. (Tr. 171). He stated that he pulled off to the side of the road, rolled down his passenger window and asked her if she was ok. (Tr. 172). He further asked her if she needed any help or if she needed a ride to which she responded no. (Tr. 173-74). He stated that the whole conversation lasted 15 to 20 seconds. (Tr. 178). Appellant denied that he told B.S. to get in the f-ing car. (Tr. 174). He stated that he then rolled up his window and went on his way. (Tr. 178-79).

{¶28} Given this testimony, we cannot conclude that the trial court erred in denying appellant's Crim.R. 29 motion as his conviction is supported by sufficient evidence.

{¶29} If we take as true all of the evidence offered against appellant it reveals that appellant pulled up alongside B.S. as she walked in the grassy median. He either rolled down his window or opened his passenger-side door and asked her if she needed a ride. She told him she did not. He then twice told her to get into the f-ing car, backed up and attempted to cut her off. B.S. refused appellant and jogged away. White's appearance scared appellant and he drove off. This evidence supports an attempted abduction.

{¶30} The only question surrounds the element of force or threat. The Ohio Revised Code defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). In this case, appellant did not use any violence, compulsion, or constraint against B.S..

Appellant never touched B.S.. Nor did he attempt to touch, reach for, or grab B.S.. He never brandished a weapon. And at oral argument, the state agreed that appellant did not use force. Instead, it argued that appellant used an "implicit threat of force."

{¶31} The term "threat" is not defined in the Revised Code. But it is clear that "threat" as used in the abduction statute does not mean only "threat of force" or "threat of harm." This is because in several other sections defining various other crimes, the legislature used the term "threat of force" or "threat of harm" instead of merely using the term "threat" as it did in the abduction statute. See R.C. 2907.02(A)(2) (where the definition of rape includes compelling another to submit by "force or threat of force"); R.C. 2919.25(C) (where the definition of domestic violence includes knowingly causing a family or household member to believe that the offender will cause imminent physical harm to the family or household member "by threat of force"); and R.C. 2921.03(A) (where the definition of retaliation includes attempting to influence, intimidate, or hinder a public servant, party official, or witness in the discharge of the person's duty by "unlawful threat of harm.")

{¶32} A term not defined by statute is accorded its common, everyday meaning. *State v. Dorso* (1983), 4 Ohio St.3d 60, 62. Therefore, because "threat" is not defined in the statute, we will first look to its common, everyday meaning. Merriam-Webster's Online Dictionary defines "threat" as "an expression of intention to inflict evil, injury, or damage." http://www.merriam-webster.com/dictionary/threat. Further, the Ohio Supreme Court has defined "threat" as representing "a range of statements or conduct intended to impart a feeling of apprehension in the victim, whether of bodily harm, property destruction, or lawful harm, such as exposing the victim's own misconduct." *State v. Cress*, 112 Ohio St.3d 72, 2006-Ohio-6501, at ¶39. The Ohio Supreme Court also quoted the "threat" definition set out in *Planned Parenthood League of Massachusetts, Inc. v. Bla*ke (1994), 417 Mass. 467, 474, that being "'the intentional exertion of pressure to make another fearful or apprehensive of

injury or harm.'" Id. Thus, we must determine whether appellant's actions expressed such an intention.

**{¶33}** The evidence is clear that appellant never made any direct threats against B.S.. He never indicated to B.S. that there would be any consequences if she refused to get into his car. The state asserts that appellant's threat was implicit.

**{¶34}** In *State v. Muniz*, 162 Ohio App.3d 198, 2005-Ohio-3580, at ¶26, the Eighth District described "force" and "threat of force" in a case where the defendant was convicted of two separate attempted abductions:

**{¶35}** "In *State v. Gregg* * * * the court explained: 'O.R.C. 2901.01(A) does not provide for any measure of the physical exertion that might constitute force, but instead looks to the purpose for which the physical exertion, however slight, has been employed. If that purpose is to overcome a barrier against the actor's conduct, whether that barrier is in the will of a victim or the closed but unlocked door of a home, the physical exertion employed to overcome the barrier may constitute force.' Furthermore, 'force may properly be defined as "effort" rather than "violence" in a charge to the jury.'" (Internal citations omitted.)

**{¶36}** The court went on to apply these definitions to its two sets of facts:

**{¶37}** "In the first case, Muniz hung out the window and attempted to grab the victim's arm. This act of physical exertion on the part of Muniz is an act of force and is sufficient to sustain a conviction for attempted abduction. In the second case, Muniz moved toward the 11-year-old and attempted to grab her twice. Both acts of physical exertion by Muniz are sufficient to sustain a conviction for attempted abduction. Had Muniz been successful in his attempt to grab either young girl, it would have resulted in an abduction." Id. at ¶27.

**{¶38}** In the present case, like in *Muniz*, appellant took a substantial step in attempting to abduct his victim. In *Muniz*, the defendant attempted to grab his victim's arm to prevent her from getting away, but did not succeed. In the present case, appellant attempted to use his car to block B.S.'s path and prevent her from getting away. B.S. testified that she was afraid appellant was going to hurt her. Her

testimony, coupled with appellant's actions, are enough to demonstrate that appellant intentionally exerted pressure that made B.S. fearful of injury or harm.

{¶39} Considering the entire encounter between appellant and B.S. in the light most favorable to the state, as we are required to do, appellant's actions did express an intention to inflict evil, injury, or damage. The evidence may have been mostly circumstantial, however: "It is * * * well-settled under Ohio law that a defendant may be convicted solely on the basis of circumstantial evidence. [P]roof of guilt may be made by circumstantial evidence as well as by real evidence and direct or testimonial evidence, or any combination of these three classes of evidence. All three classes have equal probative value, and circumstantial evidence has no less value than the others. Circumstantial evidence is not less probative than direct evidence, and, in some instances, is even more reliable." (Internal citations and quotations omitted.) *State v. Nicely* (1988), 39 Ohio St.3d 147, 151. Appellant's efforts to get B.S. into the car were an attempt to intimidate or bully B.S. into succumbing to his demand. This can be seen as an implicit threat. B.S. was a 14-year-old girl walking alone. She was confronted by a grown man who yelled obscenities at her, moved his car toward her, and ordered her to get into his car. This clearly could have been a threatening situation for her. Furthermore, had appellant succeeded in his actions and had B.S. actually got into his car, we would view the situation as an abduction.

{¶40} Additionally, although the trial court in this case questioned the sufficiency of the evidence, it too resolved the issue by finding that reasonable minds could conclude that the evidence was sufficient to convict.

{¶41} Accordingly, appellant's first assignment of error is without merit.

{¶42} Appellant's second assignment of error states:

{¶43} "APPELLANT'S CONVICTIONS AND PRISON SENTENCES VIOLATE U.S. CONST. AMEND. VIII AND XIV AND OHIO CONST. ART. I, §§ 1, 2, 9, AND 16 AS THE CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**{¶44}** Here appellant argues that his conviction is against the manifest weight of the evidence. As argued above, he urges us to find that there was no evidence of force or threats of force. He further argues that B.S.'s and White's testimonies had many significant inconsistencies.

**{¶45}** In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins,* 78 Ohio St.3d at 387. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390.

**{¶46}** Still, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts. *State v. DeHass* (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.

**{¶47}** Appellant is correct that there are several discrepancies between B.S.'s and White's testimonies. B.S. testified that appellant never opened the car door but spoke to her only through the open window. White, however, testified that appellant opened the passenger-side door. Additionally, B.S. testified that twice appellant backed up and pulled in front of her in an attempt to cut her off. But White testified that once appellant pulled up into the median, he never moved his car until he pulled back onto the road. She even testified that there was no way appellant could have backed his car up because he would have run into her car.

**{¶48}** Despite these inconsistencies, however, whether to believe B.S.'s and White's testimonies was a credibility decision for the jury to make. Although an appellate court is permitted to independently weigh the credibility of the witnesses when determining whether a conviction is against the manifest weight of the

evidence, great deference must be given to the fact finders' determination of witnesses' credibility. *State v. Wright,* 10th Dist. No. 03AP-470, 2004-Ohio-677, at ¶11. The policy underlying this presumption is that the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. Id.

**{¶49}** Additionally, as discussed above, while there was no evidence of force, there was evidence that appellant used an implicit threat to try to lure B.S. into his car. Appellant's version of the events indicated that there were no threats. But once again, whether to believe appellant's testimony or that of the other witnesses was a matter for the jury.

**{¶50}** Thus, we cannot conclude that the jury clearly lost its way in reaching its verdict. Accordingly, appellant's second assignment of error is without merit.

**{¶51}** Appellant's third assignment of error states:

**{¶52}** "APPELLANT WAS DENIED A FAIR TRIAL DEMANDED BY U.S. CONST. AMEND. XIV AND BY OHIO CONST., ART. I, §§1, 2, AND 16 THROUGH A COMBINATION OF PROSECUTORIAL MISCONDUCT, INEFFECTIVE ASSISTANCE OF COUNSEL PREMISED UPON A FAILURE TO OBJECT, AND A DENIAL OF DUE PROCESS THROUGH THE TRIAL COURT'S FAILURE TO REMEDY THE ERROR."

**{¶53}** Here appellant argues both that the prosecutor engaged in misconduct and that his counsel was ineffective for failing to object to said misconduct. Appellant argues that this misconduct was particularly prejudicial because the evidence against him was so scant.

**{¶54}** To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. *Strickland v. Washington* (1984), 466 U.S. 668, 687; *State v. Bradley* (1989), 42 Ohio St.3d 136, at paragraph two of the syllabus. Second, appellant must demonstrate

that he was prejudiced by counsel's performance. Id. To show that he has been prejudiced by counsel's deficient performance, appellant must prove that, but for counsel's errors, the result of the trial would have been different. *Bradley*, at paragraph three of the syllabus.

**{¶55}** Appellant bears the burden of proof on the issue of counsel's effectiveness. *State v. Calhoun* (1999), 86 Ohio St.3d 279, 289. In Ohio, a licensed attorney is presumed competent. Id.

**{¶56}** The test for prosecutorial misconduct is whether the conduct complained of deprived the defendant of a fair trial. *State v. Fears* (1999), 86 Ohio St.3d 329, 332. In reviewing a prosecutor's alleged misconduct, a court should look at whether the prosecutor's remarks were improper and whether the prosecutor's remarks affected the appellant's substantial rights. *State v. Smith* (1984), 14 Ohio St.3d 13, 14. "[T]he touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.' " *State v. Hanna,* 95 Ohio St.3d 285, 2002-Ohio-2221, at ¶ 61, quoting *Smith v. Phillips* (1982), 455 U.S. 209, 219. An appellate court should not deem a trial unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments. *State v. LaMar,* 95 Ohio St.3d 181, 2002-Ohio-2128, at ¶121.

**{¶57}** A failure to object to alleged prosecutorial misconduct generally waives all but plain error. *Hanna* at ¶77; *LaMar* at ¶126. But a defendant's claim that he was denied effective assistance of counsel eliminates the requirement that an objection be made in order to preserve an error for appeal. *State v. Carpenter* (1996), 116 Ohio App.3d 615, 621.

**{¶58}** Specifically, appellant takes issue with two comments. First, the prosecutor began his opening statement by stating, "this Defendant is every parent's worst nightmare." (Tr. 22). The prosecutor made the same comment during closing arguments. (Tr. 203). Appellant's counsel failed to object on either occasion. Second, during the redirect examination of Officer O'Grady the prosecutor

characterized defense counsel's actions as "disingenuous." (Tr. 121). There was no objection but the trial court interrupted the prosecutor to remind him that he could not editorialize on what opposing counsel did. (Tr. 121).

**{¶59}** While the above mentioned comments may have been inappropriate, they did not render appellant's trial unfair. These were two isolated comments in an otherwise fair trial. As to the first comment, as appellee points out, this characterization of appellant was no more prejudicial than others that have been upheld by the Ohio Supreme Court such as "baby murderer" and "baby molester," "mean-spirited derelict" and "unemployed killer," and "coward." *State v. Smith*, 97 Ohio St.3d 367, 2002-Ohio-6659, at ¶47; *State v. Nields* (2001), 93 Ohio St.3d 6, 37; *State v. Clemons* (1998), 82 Ohio St.3d 438, 451. And as to the second comment, the court advised the prosecutor, in the presence of the jury, that his comment was improper.

**{¶60}** Accordingly, appellant's third assignment of error is without merit.

**{¶61}** For the reasons stated above, appellant's conviction is hereby affirmed.

Vukovich, P.J., concurs.

Waite, J., concurs.