OPINION *Page 2 
{¶ 1} Defendant-appellant Chaz Bunch appeals the sentence issued in the Mahoning County Common Pleas Court for his convictions for aggravated robbery, three counts of rape, three counts of complicity to commit rape, kidnapping, and aggravating menacing. Three issues are raised in this appeal. The first issue is whether the trial court's use of a blanket policy that all defendants who commit rape get the maximum sentence amounted to an abuse of discretion. The second issue is whetherState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, violates ex post facto laws. The third issue is whether the imposition of an 89 year sentence, which effectively is a life sentence without parole, for a crime committed by a juvenile offender, violates the Eighth andFourteenth Amendments of the United States Constitution. For the reasons stated below, the judgment of the trial court is hereby affirmed.
 STATEMENT OF CASE AND FACTS {¶ 2} This appeal is related to Bunch's prior appeal — State v.Bunch, 7th Dist. No. 02CA196, 2005-Ohio-3309. In Bunch, we affirmed his convictions for aggravated robbery, three counts of rape, three counts of complicity to commit rape, kidnapping, and aggravated menacing. We also affirmed the gun specifications attached to the aggravated robbery conviction, kidnapping conviction, three rape convictions, and three complicity to commit rape convictions. However, in that opinion, we reversed and remanded for resentencing because the trial court failed to comply with the felony sentencing statute. Id. at ¶ 233. Specifically, we noted that it failed to make the appropriate consecutive sentencing findings. Id. at ¶ 177-187. Furthermore, we directed the trial court that on the eight gun specifications, at most, the trial court could sentence Bunch to nine years. Id. at ¶ 229. Thus, we explained, if Bunch received maximum consecutive sentences for the convictions, he could, at most, receive an aggregate sentence of 89 years. Id. at ¶ 233.
 {¶ 3} Bunch appealed our decision to the Ohio Supreme Court. The Supreme Court accepted the appeal but only as to issues related to the Ohio felony sentencing scheme — whether the Ohio felony sentencing scheme that requiring certain findings for maximum, nonminimum and consecutive sentences was constitutional. The Ohio *Page 3 
Supreme Court, in Foster, determined that it was not and provided the remedy of severance. In accordance with that opinion, it reversed Bunch's sentence and remanded it for resentencing.
 {¶ 4} Bunch was resentenced on July 13, 2006. He received a total of 89 years. He received the maximum sentence for all nine crimes. The eight felonies were ordered to be served consecutive to each other, but by law, the misdemeanor was ordered to be served concurrently. Bunch received three years apiece on each of the eight gun specifications. Due to merging of some of the gun specifications, Bunch received a total of nine years for the gun specifications. Bunch now appeals that sentence.
 FIRST ASSIGNMENT OF ERROR {¶ 5} "THE TRIAL COURT ERRED BY USING A BLANKET POLICY TO SENTENCE CHAZ INSTEAD OF EXERCISING ITS DISCRETION."
 {¶ 6} We review a trial court's post-Foster sentence for an abuse of discretion. The Ninth Appellate District has recently explained:
 {¶ 7} "Foster `vest[ed] sentencing judges with full discretion' in sentencing. Foster at ¶ 100. Accordingly, post-Foster, this Court reviews felony sentences under an abuse of discretion standard.State v. Windham, 9th Dist. No. 05CA0033, 2006-Ohio-1544, at ¶ 12. An abuse of discretion is more than an error in judgment or law; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. Furthermore, when applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Ports v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621." State v. Coleman, 9th Dist. No. 06CA008877, 2006-Ohio-6329, ¶ 11.
 {¶ 8} Bunch admits that trial courts now have significant discretion in sentencing. However, he argues that the trial court made a blanket statement that a person who commits rape will get the maximum sentence. He claims that such a blanket statement means the trial court was not looking at all the facts and was just following that blanket policy, which in his opinion, is an abuse of discretion.
 {¶ 9} The statement he points to was made by the trial court during sentencing. It stated: *Page 4 
 {¶ 10} "See that lady sitting at the table there? She's the lady who prosecutes rape cases in this community now. And she can tell you that somebody who rapes somebody in this court gets sentenced to the maximum. So if it's going to be commensurate with a similar crime for similar offenders, that's probably what I have to do." (Tr. 29).
 {¶ 11} The above is only a small portion of what the trial court stated prior to sentencing Bunch. Below is a recitation of the majority of the analysis the court gave prior to issuing a sentence:
 {¶ 12} "The court has to consider the principles and purposes of sentencing. Those being to punish the offender and to protect the public from future crime by this offender and by others like him. That means that when I sentence someone, when I say and others, that I have to make sure that anybody like you who would think about doing this to another human being, better know and understand you're going to get whacked.
 {¶ 13} "The court also has to consider the need for incapacitation, deterrence, rehabilitation and restitution. Well, certainly you need to be incapacitated and deterred. I don't know that someone that did what you did could be rehabilitated. And restitution is out of the question.
 {¶ 14} "The sentence has to be commensurate with and not demeaning to the seriousness of your conduct. Can't be more serious. It's impact on the victim. The impact can't be more profound. And it must be consistent with sentences for similar crimes by similar offenders.
 {¶ 15} "See that lady sitting at the table there? She's the lady who prosecutes rape cases in this community now. And she can tell you that somebody who rapes somebody in this court gets sentenced to the maximum. So if it's going to be commensurate with a similar crime for similar offenders, that's probably what I have to do.
 {¶ 16} "* * *
 {¶ 17} "The court has to consider the seriousness factors in 2929.12(B) and (C). The victim suffered serious physical, psychological and economic harm as a result of the offense. *Page 5 
 {¶ 18} "Now, as much as you claim race as a card in this case, this court could find that your crime was motivated by some prejudice based upon the victim's race, because that's one of the factors that is listed in the seriousness factors that make a crime more serious. This court also felt that the injury to the victim in this case was worsened by the age of the victim.
 {¶ 19} "* * *
 {¶ 20} "The factors that make the crime less serious are absolutely, unequivocally inapplicable in this case.
 {¶ 21} "Factors that make the — or factors to consider regarding recidivism under 2929.12(B) and (E), the offender was out on bail before trial or sentencing or under court sanction or postrelease control or parole when it was committed. Those were juvenile sanctions imposed upon the offender. He has several prior adjudications of delinquency. He had failed to respond favorably in the past to sanctions imposed for those delinquencies. He shows absolutely no remorse for the offense.
 {¶ 22} "Factors that make recidivism unlikely, obviously none of them apply. He was too young to have any prior criminal convictions, so even though that is a factor for recidivism unlikely, it's completely inapplicable due to its impossibility.
 {¶ 23} "And so it's very clear that this crime was far — these crimes are far more serious than less serious, and that recidivism is far more likely than it is unlikely. The court also has to consider the sentencing criteria under 2929.13. Felonies of the first degree bear presumption in favor of a prison term, unless a nonprison term would both adequately protect the public and punish the offender. Well, I don't believe that.
 {¶ 24} "And because factors indicating recidivism is less likely outweigh factors indicating recidivism is more likely. Well, that's obviously not the fact in this case.
 {¶ 25} "The court would also have to find that a nonprison sanction would not demean the seriousness of the offense because the less serious factors outweigh the more serious factors. Again, that is not a fact in this case.
 {¶ 26} "The court has to review 2929.14(A), because that's about all that's left of it, and take into account the facts of this case and the presentence investigation and report that was prepared. These defendants abducted the victim from her job at a *Page 6 
group home. In fact, she had purchased a treat for the persons at the group home and had gone to work early that day to share the treat with them when she was confronted by one of these four.
 {¶ 27} "She was abducted into a vehicle, her vehicle. She was robbed at gunpoint in the vehicle and raped digitally while in the vehicle. She was kidnapped from the area on Detroit Avenue all the way down to Pyatt Street.
 {¶ 28} "At the Pyatt Street location she was raped over and over and over again by this defendant and others. As the victim described it, like persons taking turns at a drinking fountain when they're in grade school.
 {¶ 29} "She was threatened with a firearm again. In fact, it was placed in her mouth when this defendant was going to kill her. Apparently was talked out it, because the victim claimed to be pregnant. One of his codefendants convinced him that he shouldn't shoot a pregnant lady.
 {¶ 30} "She got away, and these fellahs got together and split up the bounty from their robbery. In fact, went up and purchased some items at the Dairy Mart on Mahoning Avenue.
 {¶ 31} "When the police discovered the vehicle and started to follow them and then had to give chase, this defendant jumped out of the vehicle once it stopped up on the lower end of the south side. And after the investigation and identification by the victim, the defendant was apprehended and indicted.
 {¶ 32} "I don't know that anyone could do anything worse to another human being than you did to that lady. I don't know how anything could be more inhumane, disrespectful, evil, vicious, brutal, unspeakable than what you did to this lady." (Tr. 28-34).
 {¶ 33} The court then went on to sentence Bunch to a total of 89 years. (Tr. 39-41).
 {¶ 34} In view of the above, we cannot find that the trial court abused its discretion in sentencing Bunch to maximum, consecutive sentences. The Ohio Supreme Court has stated that trial courts must consider R.C. 2929.11 (purposes of sentencing) and 2929.12 (factors relating to seriousness of offense and recidivism of the offender) when sentencing an offender. State v. Mathis, 109 Ohio St.3d 54,2006-Ohio-855, ¶ 38. *Page 7 
As the above excerpt shows, the trial court did just that; it provided five plus pages of analysis concerning the facts of the case and the statutory considerations.
 {¶ 35} That said, it is acknowledged that the trial court did state "that somebody who rapes somebody in this court gets sentenced to the maximum." However, in the following sentence it stated that to be proportionate with similar crimes that was what it "probably" should do. The court specifically used the word probably. It did not state that it had to or would do that. Thus, its statement does not show an abuse of discretion.
 {¶ 36} Accordingly, for all the above reasons, the trial court did not abuse its discretion when it sentenced Bunch to 89 years. This assignment of error lacks merit.
 SECOND ASSIGNMENT OF ERROR {¶ 37} "THE TRIAL COURT ERRED BY IMPOSING NON-MINIMUM, MAXIMUM, AND CONSECUTIVE PRISON SENTENCES. SENTENCING ENTRY, APX. AT A-1."
 {¶ 38} Bunch's second assignment of error argues that theFoster remedy of severance violates the prohibition against ex post facto laws.
 {¶ 39} During sentencing, Bunch did not argue that Foster violated the prohibition against ex post facto laws and thus it should not apply to him. As such, it is not necessary to address the merits of his argument.State v. Payne, 114 Ohio St.3d 502, 2007-Ohio-4642. Regardless, even if we proceed to address the merits, this court has continually found the ex post argument to be meritless. State v. Palmer, 7th Dist. No. 06JE20,2007-Ohio-1572, ¶ 59-76; State v. Balwanz, 7th Dist. No. 07BE20,2007-Ohio-5041, ¶ 16-19. Therefore, this assignment of error lacks merit.
 THIRD ASSIGNMENT OF ERROR {¶ 40} "THE TRIAL COURT ERRED BY IMPOSING A SENTENCE THAT IS EQUIVALENT OF LIFE WITHOUT PAROLE FOR A CRIME COMMITTED AS A JUVENILE."
 {¶ 41} Bunch argues that his 89 year prison sentence violates theEighth and Fourteenth Amendments to the United States Constitution. He states that when he completes his sentence, he will be 106 years old. He indicates, with citation to *Page 8 
authorities, that his life expectancy is only 70 years. Thus, he maintains that the 89 year sentence is equivalent to a sentence of life in prison without the possibility of parole and argues that the sentence constitutes "a cruel and unusual sentence."
 {¶ 42} In support of his argument, Bunch cites this court to the United States Supreme Court's decision in Roper v. Simmons (2005),543 U.S. 551. In Simmons, the Supreme Court found that it was violative of the Eighth Amendment to execute a juvenile. The Simmons Court first noted that the death penalty is the most severe punishment and should be "limited to those offenders who commit `a narrow category of the most serious crimes' and whose extreme culpability makes them `the most deserving of execution.'" Id. citing Atkins v. Virginia (2002),536 U.S. 304, 319. In explaining that juveniles do not fall within that category, the Court pointed out the developmental differences between juveniles and adults. For instance, juveniles lack maturity and have an underdeveloped sense of responsibility that often results in ill-considered actions and decisions. Id. Also, juveniles are more susceptible to negative influences and peer pressure. Id. Furthermore, a juvenile's character is not as well formed as that of an adult. Id. It explained that these "differences render suspect any conclusion that a juvenile falls among the worst offenders. The susceptibility of juveniles to immature and irresponsible behavior means `their irresponsible conduct is not as morally reprehensible as that of an adult.'" Id. It then added that once the diminished culpability of juveniles is recognized, the penological justifications for the death penalty (retribution and deterrence of capital crimes by prospective offenders) apply to them with lesser force than adults. Id.
 {¶ 43} Bunch uses the above analysis to argue that sentencing a juvenile to a prison term of life without the possibility of parole or an equivalent sentence constitutes cruel and unusual punishment. He maintains that the factors that make the death penalty cruel and unusual for juveniles equally applies to a sentence of life in prison without the possibility of parole or an equivalent sentence. He supports this by pointing this court to the following statement made by theSimmons Court. "[I]t is worth noting that the punishment of life imprisonment without the possibility of parole is itself a severe sanction, in particular for a young person." He contends that that *Page 9 
statement along with the Simmons analysis of juveniles being immature and irresponsible leads to the conclusion that his sentence violates theEighth Amendment.
 {¶ 44} The statement Bunch points to about the "harshness" of a sentence of life imprisonment without the possibility of parole for a juvenile is only a selected part of a sentence that when read by itself may seem to lend support for his position. However, when that statement is read within the context within which it was written, it is clear that the Supreme Court is not indicating such a position. The whole paragraph reads as follows:
 {¶ 45} "As for deterrence, it is unclear whether the death penalty has a significant or even measurable deterrent effect on juveniles, as counsel for the petitioner acknowledged at oral argument. In general we leave to legislatures the assessment of the efficacy of various criminal penalty schemes. Here, however, the absence of evidence of deterrent effect is of special concern because the same characteristics that render juveniles less culpable than adults suggest as well that juveniles will be less susceptible to deterrence. In particular, as the plurality observed in Thompson, `[t]he likelihood that the teenage offender has made the kind of cost-benefit analysis that attaches any weight to the possibility of execution is so remote as to be virtually nonexistent.' To the extent the juvenile death penalty might have residual deterrent effect, it is worth noting that the punishment of life imprisonment without the possibility of parole is itself a severe sanction, in particular for a young person." Id. (internal citations omitted).
 {¶ 46} As can be seen by this paragraph, the Supreme Court is discussing the deterrent effect that the death penalty would have on a juvenile. The Supreme Court determines that it is unclear whether the death penalty provides a deterrent to juvenile offenders. It is at this point that the Supreme Court mentions life imprisonment without the possibility of parole. The purpose of mentioning life imprisonment without the possibility of parole is not to equate it with the death penalty. Rather, it is used to indicate that it is a severe sanction for a juvenile and due to the impact it has on a juvenile it could be used instead of the death penalty. It is simply indicating that life imprisonment without the possibility of parole is a good alternative to the death penalty *Page 10 
for juveniles. It is not an indication that life imprisonment without the possibility of parole or an equivalent sentence to that is cruel and unusual punishment.
 {¶ 47} Furthermore, the reasons the Simmons' Court gives to render the death penalty unconstitutional for juveniles are used specifically for the context of death penalty analysis alone, i.e. to determine whether they fall within the category of the worst offenders who commit a narrow category of the most serious crimes and whose extreme culpability makes them the most deserving of execution. The analysis for the determination of the death penalty is not equally applicable to a non death penalty situation. As the Supreme Court notes, the death penalty is the most severe punishment and in that context the Eighth Amendment applies to it with special force. Id.
 {¶ 48} Considering all the above, we find that the analysis and reasoning for not applying the death penalty to juveniles does not support the conclusion that for a juvenile, a life imprisonment term without the possibility of parole or an equivalent sentence, is unconstitutional.
 {¶ 49} Lastly, Bunch argues that even if the sentence is constitutional, the trial court's mandatory nature to sentencing renders it unconstitutional. This argument fails for the same reason the first assignment of error fails.
 {¶ 50} For all the above stated reasons, the sentence did not violate the Eighth Amendment prohibition against cruel and unusual punishment. This assignment of error fails.
 {¶ 51} In conclusion all assignments of error lack merit. The judgment of the trial court is hereby affirmed.
 Donofrio, J., concurs. Waite, J., concurs. *Page 1