JOURNAL ENTRY AND OPINION
{¶ 1} Appellant George Semenchuck appeals his conviction and sentence, and assigns eleven errors for our review.[1]
 {¶ 2} Having reviewed the record and pertinent law, we affirm Semenchuck's conviction and sentence. The apposite facts follow.
 {¶ 3} On December 20, 2006, the Cuyahoga County Grand Jury indicted Semenchuck on one count of assault on a peace officer and two counts of driving under the influence of alcohol and/or drug of abuse ("DUI"). Semenchuck pleaded not guilty at his arraignment and a trial was scheduled for October 11, 2007.
 {¶ 4} On the day of trial, the trial court overruled both Semenchuck's motion to suppress the stop of his vehicle and motion to dismiss based on speedy trial violation. The State also dismissed one count of DUI.
 Jury Trial {¶ 5} At trial, the evidence established that on August 12, 2006, at approximately 6:00 p.m, Newburgh Heights police officers responded to a Speedway gas station because of a report of an intoxicated male urinating behind the gas station. When the police arrived, several patrons directed the officer's attention to the individual, who was the subject of the reported infraction. The officers observed *Page 4 
Semenchuck in a grey minivan, driving slowly in a circle around an adjacent parking lot, and ordered him to stop the vehicle.
 {¶ 6} When the officers approached, a strong odor of alcohol and urine emanated from the vehicle. The officers observed an open container of Jagermeister between the two front seats of the vehicle. The officers also noticed that Semenchuck's shorts were unbuttoned, exposing his genitalia and that he appeared to have urinated on himself.
 {¶ 7} The officers asked Semenchuck to exit the vehicle, but when he attempted to step out of the vehicle, he could hardly stand, and had to be propped up against the side of the vehicle. Semenchuck's speech was slow and slurred. The officers determined that he was too intoxicated to be safely given a field sobriety test.
 {¶ 8} The officers transported Semenchuck to the police station, and after a forty-five minute observation period, the officers asked him to submit to a blood alcohol test. Semenchuck refused to take the test, spewed profanity, became combative and had to be pepper sprayed.
 {¶ 9} On October 15, 2007, the jury found Semenchuck not guilty of assault on a peace officer, but guilty of DUI. On November 30, 2007, the trial court sentenced him to a prison term of five years, a $10,000 fine, a lifetime driver's license suspension and three years of postrelease control. *Page 5 
 Speedy Trial {¶ 10} In the first assigned error, Semenchuck argues that the trial court violated his right to a speedy trial. We disagree.
 {¶ 11} The Sixth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution guarantee an accused the right to a speedy and a public trial. The standard of review that appellate courts apply to speedy trial issues is to count days as set forth in R.C. 2945.71.[2]
 {¶ 12} Trial must be held within 270 days of an arrest in order to effectuate a speedy trial.[3] However, pursuant to R.C. 2945.71(E) each day spent in jail "on a pending charge" acts as three days toward speedy trial time, thus 90 days time in jail would equate to 270 days using the triple-count provision.
 {¶ 13} In the instant case, the record indicates that the Newburgh Heights police officers arrested Semenchuck on August 12, 2006, and transported him to the Bedford Heights jail to undergo detoxification. The following day, Semenchuck was released from jail without the Bedford Court setting a bond.
 {¶ 14} After Semenchuck was indicted on December 20, 2006, he was summoned by certified mail to the address he provided when he was arrested. On *Page 6 
January 5, 2007, Semenchuck failed to appear for his arraignment and the court issued a capias for his arrest.
 {¶ 15} On July 20, 2007, Semenchuck was arrested. He was arraigned on July 24, 2007, and the trial court set Semenchuck's bond at $10,000. Semenchuck did not post bond and remained in jail until trial began on October 11, 2007.
 {¶ 16} Semenchuck now argues that his speedy trial time began on August 12, 2006, when he was originally arrested, and more than 270 days elapsed before he was brought to trial, thus his motion to dismiss should have been granted. We are not persuaded.
 {¶ 17} The constitutional right to a speedy trial arises when a person becomes an "accused."[4] A person becomes accused when prosecution is initiated against him, either through "formal indictment or information or [by] the actual restraints imposed by arrest and holding to answer a criminal charge * * *."[5]
 {¶ 18} The Speedy Trial Clause's core concern is impairment of liberty.[6] Thus, when defendants are not incarcerated or subjected to other substantial restrictions *Page 7 
on their liberty, a court should not weigh that time towards a claim under the Speedy Trial Clause.[7]
 {¶ 19} We have previously held that the speedy trial provisions of R.C. 2945.71 do not apply until a defendant is arrested for the particular offense from which he seeks discharge.[8] Therefore, it is the arrest on a pending charge that commences the running of the speedy trial statute.
 {¶ 20} Upon review, the calculation relating to Semenchuck's right to a speedy trial did not begin to run until well after the charges were filed against him; until he was arrested on July 20, 2007. Although Semenchuck was initially detained on August 12, 2006, he was released the following day, after undergoing detoxification, without any condition of bond. Since Semenchuck was not being held pending the filing of charges, the alleged delay between his original detainment without charges being filed and the subsequent filing of the charges is without consequence to his statutory right to a speedy trial.
 {¶ 21} As previously noted, after Semenchuck's arrest on July 20, 2007, he remained in jail without posting bond. Pursuant to R.C. 2945.71(E), each day Semenchuck remained in jail counted as three days toward speedy trial time, thus, *Page 8 
he had to be brought to trial within 90 days of his arrest. In calculating this time, we commence counting the day after Semenchuck's arrest.[9]
 {¶ 22} Consequently, Semenchuck had to be brought to trial 90 days from July 21, 2007, or by October 18, 2007. Since Semenchuck was brought to trial on October 11, 2007, his right to a speedy trial was not violated. Thus, the trial court did not err in denying the motion. Accordingly, we overrule the first assigned error.
 Motion to Suppress {¶ 23} In the second assigned error, Semenchuck argues that the trial court erred in denying his motion to suppress because the Newburgh Heights police violated his rights under Fourth Amendment by stopping his vehicle. We disagree.
 {¶ 24} An appeal of a trial court's ruling on a motion to suppress evidence involves mixed questions of law and fact.[10] Initially, we note that in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.[11] *Page 9 
 {¶ 25} The credibility of witnesses during a suppression hearing is a matter for the trial court. A reviewing court should not disturb the trial court's findings on the issue of credibility.[12] Accordingly, in our review we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence.[13]
 {¶ 26} The Fourth Amendment to the Constitution of the United States and Section 14, Article, I, of the Constitution of Ohio, prohibit unreasonable searches of persons and seizure of their property. Evidence obtained by the State in violation of that prohibition must be suppressed from use by the State in its criminal prosecution of the person from whom it was seized. The purpose of suppression is not to vindicate the rights of the accused person, who may very well have engaged in illegal conduct, but to deter the State from such acts in the future.[14] The rule is also applied to protect the integrity of the court and its proceedings.[15]
 {¶ 27} Searches and seizures conducted without the authority of a prior judicial warrant are unreasonable per se, and therefore illegal.[16] The State may, *Page 10 
nevertheless, prove that its warrantless search was not unreasonable, and thus not illegal, if the State demonstrates that its Officer acted according to one of several exceptions to the warrant requirement when the search and seizure was performed.[17] If the State meets that burden, suppression of the evidence seized is not proper.
 {¶ 28} In order to constitutionally stop a vehicle, an officer must, at a minimum, have either: (1) a reasonable suspicion, supported by specific and articulable facts, that criminal behavior has occurred, is occurring, or is imminent; or (2) a reasonable suspicion, supported by specific and articulable facts, that the vehicle should be stopped in the interests of public safety.[18]
 {¶ 29} An officer's "reasonable suspicion" is determined based on the totality of the circumstances.[19] Specific and articulable facts that will justify an investigatory stop by way of reasonable suspicion include: (1) location; (2) the officer's *Page 11 
experience, training or knowledge; (3) the suspect's' conduct or appearance; and (4) the surrounding circumstances.[20]
 {¶ 30} Applying these rules of law sub judice, we find that Semenchuck's arguments lack merit. At the suppression hearing, Officer Szelenyl testified that after being dispatched to the gas station, based on a report of an intoxicated male urinating in plain sight, several patrons pointed out Semenchuck. Officer Szelenyl testified that he observed Semenchuck in a grey van, driving slowly in circles around an adjacent parking lot. Officer Szelenyl testified that he asked Semenchuck to stop the vehicle, and upon approaching the stopped vehicle, a strong odor of alcohol and urine emanated from the vehicle.
 {¶ 31} In addition, Officer Szelenyl testified that he observed an open bottle of liquor between the driver's and passenger's seats. He also observed that Semenchuck's shorts were unbuttoned and unzipped causing the area of his crotch to be exposed. Officer Szelenyl testified that Semenchuck's speech was slow and slurred. Officer Szelenyl further testified that when he asked Semenchuck to step out of the vehicle, Semenchuck was unable to stand and had to be propped up against the side of the vehicle. *Page 12 
 {¶ 32} Here, based on the totality of the circumstances, Officer Szelenyl had a reasonable suspicion that Semenchuck might be driving impaired; and as such, Semenchuck's driving constituted a public safety hazard. Consequently, the investigatory traffic stop was permissible pursuant to Officer Szelenyl's reasonable articulable suspicion that Semenchuck's continued operation of his vehicle was a public safety hazard. Consequently, the trial court properly denied the motion to suppress. Accordingly, we overrule the second assigned error.
 Discharging a Juror for Cause {¶ 33} In the third assigned error, Semenchuck argues the trial court erred in overruling his motion to discharge a prospective juror for cause. We disagree.
 {¶ 34} Removal of a juror is within the sound discretion of the trial court.[21] An appellate court applies the abuse of discretion standard of review.[22] A finding that the trial court abused its discretion implies that the court acted unreasonably, arbitrarily or unconscionably.[23]
 {¶ 35} Semenchuck argues the trial court should have granted his motion to discharge juror Danny Bullard for cause on the basis that Bullard's son, Mark, is an assistant prosecutor with Cuyahoga County. We are not persuaded. *Page 13 
 {¶ 36} During voir dire, Bullard indicated that his son's employment with the prosecutor's office would not affect his ability to be fair, and added that it might even help. R.C. 2313.42 provides that a juror may be dismissed for cause if he or she cannot be a fair and impartial juror.[24] Nothing in the record indicates that Bullard could not be fair.
 {¶ 37} During voir dire, the following exchange ensued with another juror:
 "Mr. Rzewnicki: ***Just one other thing I want to say. I do work with — Medical Mutual and I work with Paul Mancino who is, I think, the son of Mr. Paul Mancino.
 Mr. Mancino: Yeah.
 Mr. Rzewnicki: Who is an attorney there and so Paul and I have worked together probably for 10 years. We're not drinking buddies or anything and we don't socialize. We have worked together closely. We have worked together closely for that 10-year period.
 The Court: ***Now is there anything about your relationship with Mr. Mancino's son that would affect your ability to be fair and impartial?
 Mr. Rzewnicki: Nothing conscious."[25]
 {¶ 38} In overruling defense counsel's[26] motion to discharge Bullard, the trial court reminded defense counsel that Rzewnicki, another juror, indicated that he has *Page 14 
worked with defense counsel's son for more than ten years. The trial court added that neither defense counsel or the State sought to discharge Rzewnicki for cause. The trial court further added that although each side could have attempted to excuse Rzewnicki, for cause, he would not have granted it because the juror indicated that he could be fair.
 {¶ 39} We conclude that the trial court's decision overruling Semenchuck's motion to dismiss Bullard did not amount to an abuse of discretion. The juror indicated that he could be fair and impartial. Accordingly, we overrule the third assigned error.
 Refusing to Submit to Blood Alcohol Test {¶ 40} In the fourth assigned error, Semenchuck argues that his refusal to submit to the blood alcohol test was used as evidence of guilt and thus violated his Fifth and Sixth Amendments rights. We disagree.
 {¶ 41} Officer Szelenyl testified that he was unable to perform any field sobriety tests because of Semenchuck's lack of motor skills and inability to stand on his own. Officer Szelenyl testified that he arrested, Mirandized and transported Semenchuck to the police station. Officer Szelenyl further testified that after Semenchuck had undergone a forty-five minute observation period, he was asked to submit to a blood alcohol test, which he refused. Semenchuck now contends that evidence of his refusal violates his Fifth and Sixth Amendment rights. We are not persuaded. *Page 15 
 {¶ 42} Relying on Schmerber v. California[27] the Supreme Court of Ohio held that the right to counsel associated with the protection against self-incrimination contained in the Fifth Amendment to the United States Constitution does not apply to the stage where the officer requests a chemical test for alcohol content.[28]
 {¶ 43} In Schmerber, the Supreme Court of the United States held that because the results of a test of a defendant's body fluids are non-testimonial, the police do not violate the constitutional prohibition against self-incrimination contained in the Fifth Amendment by requesting a blood test upon arrest for driving while under the influence of alcohol.[29] Therefore, an appellant has noFifth Amendment right to consult with an attorney prior to deciding whether to submit to the BAC test.[30]
 {¶ 44} The Ohio Supreme Court reached a similar holding regarding a defendant's Sixth Amendment right to counsel. In McNulty v.Curry[31] the Court relied on United States v. Wade[32] in holding that a blood test is merely a preparatory *Page 16 
step to the critical stage of the prosecution and thus theSixth Amendment does not apply.
 {¶ 45} We conclude that neither Semenchuck's Fifth nor Sixth Amendment rights were violated when Officer Szelenyl asked him to take the blood alcohol test, which he ultimately refused to take. The law is clear that tests to determine blood alcohol levels are not testimonial. Accordingly, we overrule the fourth assigned error.
 Jury Instruction {¶ 46} In the fifth assigned error, Semenchuck argues the trial court erred in instructing the jury that they could infer that he was under the influence of alcohol by his refusal to take the blood alcohol test. We disagree.
 {¶ 47} The United States Supreme Court has held that the admission of evidence at trial of a defendant's refusal to take a chemical test does not violate the defendant's Fifth Amendment privilege against self-incrimination or the Fourteenth Amendment right to due process.[33] The Supreme Court of Ohio has held that the trier of fact may consider a defendant's refusal to submit to a chemical test as evidence in deciding whether the defendant was under the influence of alcohol.[34] *Page 17 
 {¶ 48} Further, the use of the refusal as evidence of a defendant being under the influence is controlled by an authorized jury instruction, which reads as follows:
 "Evidence has been introduced indicating the defendant was asked but refused to submit to a chemical test of his breath to determine the amount of alcohol in his system, for the purpose of suggesting that the defendant believed he was under the influence of alcohol. If you find the defendant refused to submit to said test, you may, but are not required to, consider this evidence along with all the other facts and circumstances in evidence in deciding whether the defendant was under the influence of alcohol."[35]
 {¶ 49} The record indicates that the trial court gave the above authorized instructions to the jury. Consequently, Semenchuck's rights were not violated. Accordingly, we overrule the fifth assigned error.
 Dismissal of Specification {¶ 50} In the sixth assigned error, Semenchuck argues the trial court erred in overruling his motion to strike a specification of a prior conviction for DUI. We disagree.
 {¶ 51} The record indicates that Count 3 of the indictment included a specification that Semenchuck had previously been convicted of a DUI. Because the journal entry referred to the conviction as a fifth degree, instead of a fourth degree felony, Semenchuck now argues that the specification should have been dismissed. We are not persuaded. *Page 18 
 {¶ 52} At trial, defense counsel stipulated to Semenchuck's conviction, after first indicating that he thought the prior conviction was a fourth degree felony. A stipulation to the fact of a prior conviction constitutes a stipulation as to the conviction's constitutionality, unless the defendant raises the constitutional challenge at the trial where the conviction is used to enhance a penalty.[36]
 {¶ 53} Here, the record indicates that trial counsel did not raise a constitutional challenge to the prior conviction, instead trial counsel's assertion was that the conviction was labeled incorrectly. Given that Semenchuck did not set forth any challenge to the constitutionality of the prior conviction at the trial court level, he may not do so now. Accordingly, we overrule the sixth assigned error.
 Motion for Acquittal {¶ 54} In the seventh assigned error, Semenchuck argues the trial court should have granted his motion for acquittal because the evidence was insufficient to support his conviction. We disagree.
 {¶ 55} The sufficiency of the evidence standard of review is set forth in State v. Bridgeman:[37] *Page 19 
 "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."[38]
 {¶ 56} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks, [39] in which the Ohio Supreme Court held:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)" *Page 20 
 {¶ 57} After reviewing the evidence in a light most favorable to the State, we find that the evidence, if believed, could convince a rational trier of fact that the State had proven beyond a reasonable doubt each element of the charge of DUI.
 {¶ 58} The officers testified that when they were dispatched to the Speedway gas station, several patrons pointed out Semenchuck as the man who had been urinating behind the building in plain view. The officers testified that Semenchuck was in a grey van driving around an adjacent parking lot in tiny circles. The officers testified that upon approaching Semenchuck and ordering him to stop the vehicle, a strong odor of alcohol and urine emanated from the van.
 {¶ 59} In addition, the officers testified that they observed an open bottle of alcohol between the front seats, and observed that Semenchuck's shorts were unbuttoned and unzipped, causing the area of his crotch to be exposed. Further, the officers testified that when asked to step out of the vehicle, Semenchuck could hardly stand and had to be propped up against the vehicle. Finally, the officers testified that when they asked Semenchuck if he had been drinking, he stated that he was "f***'ed up."
 {¶ 60} Consequently, viewing the evidence in the light most favorable to the State, we conclude that any rational trier of fact could have found that the State proved all of the essential elements of the charge beyond a reasonable doubt. Thus, *Page 21 
the trial court properly denied Semenchuck's motion for acquittal. Accordingly, we overrule the seventh assigned error.
 Sentencing {¶ 61} Because of the substantial interrelationship of the remaining assigned errors, we shall address them together. Semenchuck argues the trial court erred in sentencing him to the maximum prison term based on judicial fact finding, including his refusal to submit to a chemical test, his addiction to alcohol and his danger to the community. We disagree.
 {¶ 62} After the jury found Semenchuck guilty of DUI, the trial court ordered a pre-sentence investigative report ("PSI"). On November 30, 2007, the trial court conducted a sentencing hearing. At the hearing, the trial court reviewed the PSI, which indicated that Semenchuck had twelve prior DUI arrests, that he was always combative, and that he routinely refused to submit to chemical testing.
 {¶ 63} The trial court also reviewed the facts of the case, revealing that police officers were dispatched to the gas station because Semenchuck was urinating in plain view of families with children. The trial court added that the police officers found Semenchuck driving around in circles and that Semenchuck was so intoxicated that he could not stand on his own.
 {¶ 64} Finally, the trial court concluded that the PSI and Semenchuk's current behavior revealed that he had not been rehabilitated and that he posed a danger to *Page 22 
the public. The trial court then sentenced Semenchuck to a prison term of five years, which he now argues is cruel and unusual punishment. We are not persuaded.
 {¶ 65} In State v. Foster, [40] the Ohio Supreme Court held that judicial fact-finding to overcome a maximum sentence is unconstitutional in light of Blakely v. Washington.[41] The Foster court severed and excised, among other statutory provisions, R.C. 2929.14(C), because imposing maximum sentences requires judicial fact-finding.[42]
 {¶ 66} "After the severance, judicial fact-finding is not required before a prison term may be imposed within the basic ranges of R.C. 2929.14(A) based upon a jury verdict or admission of the defendant."[43] As a result, "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings and give reasons for imposing maximum, consecutive, or more than the minimum sentence."[44] *Page 23 
 {¶ 67} Thus, post-Foster, we now apply an abuse of discretion standard in reviewing a sentence that is within the statutory range.[45]
 {¶ 68} An abuse of discretion is more than an error in judgment or law; it implies attitude on the part of the trial court that is unreasonable, arbitrary or unconscionable.[46] Furthermore, when applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court.[47]
 {¶ 69} In Foster, [48] the Ohio Supreme Court held that R.C. 2929.11
must still be followed by trial courts when sentencing offenders. The Court held that R.C. 2929.11 does not mandate judicial fact-finding; rather, the trial court is merely to "consider" the statutory factors set forth in this section prior to sentencing.[49]
 {¶ 70} R.C. 2929.11(A) provides that a trial court that sentences an offender for a felony conviction must be guided by the "overriding purposes of felony sentencing."[50] Those purposes are "to protect the public from future crime by the *Page 24 
offender and others and to punish the offender."[51] R.C. 2929.11(B) provides that a felony sentence must be reasonably calculated to achieve the purposes set forth under R.C. 2929.11(A), commensurate with and not demeaning to the seriousness of the crime and its impact on the victim, and consistent with sentences imposed for similar crimes committed by similar offenders.[52]
 {¶ 71} We have previously held that judicial fact-finding is not required under R.C. 2929.11.[53] Thus, trial courts must merely "consider" the statutory factors before imposing sentence.[54]
Further, a comparison of similar cases was not mandated under R.C. 2929.11(B), noting that "[e]ach case is necessarily, by its nature, different from every other case just as every person is, by nature, not the same."[55]
 {¶ 72} Here, the jury found Semenchuck guilty of DUI, a third degree felony, which carries possible prison terms of one, two, three, four, or five years.[56] The trial court sentenced Semenchuck to a prison term of five years, which is within the statutory range. *Page 25 
 {¶ 73} Our review of the record indicates that the trial court considered the overriding purposes of felony sentencing. Since the sentence imposed is within the statutory range for Semenchuck's conviction, the trial court followed the statutory process for felony sentencing, and the record is devoid of any evidence of inconsistency or disproportionality, we find that his sentence is supported by the record and not contrary to law.
 {¶ 74} Further, we find no abuse of discretion in the trial court's determination to impose a maximum sentence. Accordingly, we overrule the remaining assigned errors.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 26 
SEAN C. GALLAGHER, P.J., and KENNETH A. ROCCO, J., CONCUR.
 {¶ 75} APPENDIX
 {¶ 76} Assignments of Error
 {¶ 77} "I. Defendant was denied due process of law when the courtoverruled his motion to dismiss by reason of lack of speedy trial."
 "II. Defendant was denied due process of law when the court overruled his motion to suppress."
 "III. Defendant was denied due process of law when the court overruled the motion to discharge juror Danny Bullard for cause."
 "IV. Defendant was denied due process of law when his refusal to take a test violated his rights under the Fifth and Sixth Amendments."
 "V. Defendant was denied due process of law when the court instructed the jury on the adverse inference from defendant's refusal to submit to atest after having been advised of his rights violated his Fifth Amendment Constitutional Rights." *Page 27 
 "VI. Defendant was denied due process of law when the court overruled defendant's motion to strike a specification alleging a prior conviction."
 "VII. Defendant was denied due process of law when his motion for judgment of acquittal was overruled."
 "VIII. Defendant was denied due process of law when the court sentenced defendant based on the fact that he refused to submit to a chemical test or tests."
 "IX. Defendant was denied due process of law when he was subjected to cruel and unusual punishment based upon his addiction to alcohol."
 "X. Defendant was denied his Sixth Amendment Rights when he was sentenced to a maximum term of imprisonment based on judicial factfinding."
 "XI. Defendant was denied due process of law when the court sentenced the defendant to a maximum term of imprisonment of five years based on impermissible considerations.
[1] See appendix.
[2] State v. Stevens, Cuyahoga App. No. 87693, 2006-Ohio-5914.
[3] See R.C. 2945.71(C)(2).
[4] State v. Fitzgerald (Mar. 3, 1994), Cuyahoga App. No. 65435, quoting United States v. Marion (1971), 404 U.S. 307, 313,30 L.Ed.2d 468, 92 S.Ct. 455.
[5] Id., Marion at 320.
[6] United States v. Loud Hawk (1986), 474 U.S. 302, 312,88 L.Ed.2d 640, 106 S.Ct. 648.
[7] Id. at 312.
[8] See State v. Todd (Mar. 31, 1983), Cuyahoga App No. 45383;State v. Bacsa (June 3, 1982), Cuyahoga App. No. 43997.
[9] See, State v. Steiner (1991), 71 Ohio App.3d 249, 250-251 ("The day of the arrest is not to be included when computing the time within which a defendant must be brought to trial.") See, also, State v.McCornell (1993), 91 Ohio App.3d 141,145.
[10] State v. Boulis, Cuyahoga App. No. 86885, 2006-Ohio-3693.
[11] See State v. Robinson (1994), 98 Ohio App.3d 560; State v.Rossiter (1993), 88 Ohio App.3d 162; State v. Lewis (1992),78 Ohio App.3d 518; State v. Warren (Aug. 12, 1991), 4th Dist. No. 90CA7.
[12] See State v. Mills (1992), 62 Ohio St.3d 357; State v.Fanning (1982), 1 Ohio St.3d 19.
[13] See State v. Harris (1994), 98 Ohio App.3d 543.
[14] United States v. Calandra (1974), 414 U.S. 338, 94 S.Ct. 613,38 L.Ed. 2d 561; Stone v. Powell (1976), 428 U.S. 465, 96 S.Ct. 3037,49 L.Ed.2d 1067.
[15] United States v. Payner (1980), 447 U.S. 727, 100 S. Ct. 2439,65 L. Ed. 2d 468.
[16] Katz v. United States (1967), 389 U.S. 347, 88 S.Ct. 507,19 L.Ed. 2d 576.
[17] Id.; Coolidge v. New Hampshire (1971), 403 U.S. 443,91 S.Ct. 2022, 29 L. Ed.2d 564.
[18] State v. Moore, 3rd Dist. No. 9-07-60, 2008-Ohio-2407 citingState v. Chatton (1984), 11 Ohio St.3d 59, 61, certiorari denied by469 U.S. 856, 105 S.Ct.182, 83 L.Ed.2d 116. State v. Purtee, 3rd Dist. No. 8-04-10, 2006-Ohio-6337, citing State v. Norman (1999),136 Ohio App.3d 46, 53-54, 1999-Ohio-961.
[19] State v. Andrews, 3rd Dist. No. 2-07-30, 2008-Ohio-625, citingState v. Terry (1998), 130 Ohio App.3d 253, 257, citing State v.Andrews (1991), 57 Ohio St.3d 86, 87.
[20] Purtee, 2006-Ohio-6337, at ¶ 9, citing State v. Gaylord, 9th Dist. No. 22406, 2005 Ohio 2138, ¶ 9, citing State v. Bobo (1988),37 Ohio St.3d 177, 178-79; State v. Davison, 9th Dist. No. 21825,2004-Ohio-3251, ¶ 6.
[21] State v. Whitmore (May 3, 2001), Cuyahoga App. No. 78035, citingState v. Kelly (1994), 93 Ohio App.3d 257, 270, citing State v.Grubb (1988), 44 Ohio App.3d 94.
[22] Metzger v. Al-Ataie, 4thDist. No. 02CA11, 2003-Ohio-2784.
[23] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[24] Berk v. Matthews (1990), 53 Ohio St.3d 161, 169.
[25] Tr. 70-73.
[26] Semenchuck's present counsel was also the trial counsel.
[27] (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908.
[28] State v. Matheny (July 28, 2000), 4thDist. No. 00 CA 009, citingDobbins v. Ohio Bureau of Motor Vehicles (1996), 75 Ohio St.3d 533,537.
[29] Id., 384 U.S. at 765, 86 S.Ct. at 1832-1833,16 L.Ed.2d at 916-917.
[30] Id., Dobbins at 537.
[31] (1975), 42 Ohio St.2d 341, 344.
[32] (1967), 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149.
[33] South Dakota v. Neville (1983), 459 U.S. 553, 564-566,103 S.Ct. 916, 74 L.Ed.2d 748.
[34] City of Middleburg Heights v. Henniger, Cuyahoga App. No. 86882,2006-Ohio-3715, citing Maumee v. Anistik (1994), 69 Ohio St.3d 339,1994-Ohio-157.
[35] Id.
[36] State v. Barnes, Cuyahoga App. No. 90842, 2008-Ohio-5997, citingState v. Adams (1988), 37 Ohio St.3d 295, reversed on other grounds.
[37] (1978), 55 Ohio St.2d 261, syllabus.
[38] See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19, 23;State v. Davis (1988), 49 Ohio App.3d 109, 113.
[39] (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[40] 109 Ohio St.3d 1, 2006-Ohio-856.
[41] (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403.
[42] Id., applying United States v. Booker (2005), 543 U.S. 220,125 S.Ct. 738, 160 L.Ed.2d 621, Blakely, and Apprendi v. New Jersey (2000),530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435.
[43] Id. at ¶ 99.
[44] Foster at paragraph seven of the syllabus; State v. Mathis,109 Ohio St.3d 54, 2006-Ohio-855, at paragraph three of the syllabus.
[45] State v. Kalish, 120 Ohio St.3d 23, 2008-Ohio-4912. See, also,State v. Lindsay, 5th Dist. No. 06CA0057, 2007-Ohio-2211; State v.Parish, 6th Dist. No. OT-07-049, 2008-Ohio-5036; State v. Bunch, 9th Dist. No. 06 MA 106, 2007-Ohio-7211; and State v. Haney, 11th Dist. No. 2006-L-253, 2007-Ohio-3712.
[46] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[47] State v. Murray, 11thDist No. 2007-L-098, 2007-Ohio-6733, citingPons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621,1993-Ohio-122.
[48] 109 Ohio St.3d 1, 2006-Ohio-856.
[49] Id.
[50] State v. McCarroll, Cuyahoga App. No. 89280, 2007-Ohio-6322.
[51] Id.
[52] Id.
[53] See State v. Georgakopoulos, Cuyahoga App. No. 81934, 2003-Ohio-4341.
[54] See Foster.
[55] State v. Wheeler, 6th Dist. No. L-06-1125, 2007-Ohio-6375. See, also, State v. Donahue, 6th Dist. No. WD-03-083, 2004-Ohio-7161.
[56] R.C. 2929.14(A)(3). *Page 1