JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Samer Abualdabat appeals his conviction and sentence. Abualdabat assigns the following errors for our review:
 "I. Abualdabat's guilty plea did not comport with Rule 11 Ohio Rules of Criminal Procedure."
 "II. The trial court did not `carefully consider' Ohio Revised Code Section 2929.12 in sentencing Abualdabat to four (4) years in prison."
 {¶ 2} Having reviewed the record and pertinent law, we affirm Abualdabat's conviction and sentence. The apposite facts follow.
 {¶ 3} On October 25, 2007, Abualdabat operated an automobile that collided with another automobile. As a result of the collision, Abualdabat's passenger, Sarkiss F. Sarkiss was killed. Subsequently, on November 7, 2007, the Cuyahoga County Grand Jury indicted Abualdabat on two counts of aggravated vehicular homicide and one count of driving under the influence of alcohol or other drug.
 {¶ 4} On July 21, 2008, after numerous pre-trials had been conducted, Abualdabat and the State of Ohio reached a plea agreement. Pursuant to the plea agreement, Abualdabat pleaded guilty to one count of vehicular homicide, and the State dismissed the remaining two charges. Pursuant to the plea agreement, Abualdabat would serve prison time at the discretion of the trial court.
 {¶ 5} On August 26, 2008, the trial court sentenced Abualdabat to four years in prison, followed by three years of post release control.
Guilty Plea: Knowingly, Intelligently and Voluntarily *Page 4 
 {¶ 6} In the first assigned error, Abualdabat, a Jordanian immigrant, argued that his guilty plea was not knowingly, intelligently, and voluntarily made because his defense counsel, who acted as the interpreter, was not fully qualified for the role. We disagree.
 {¶ 7} Before accepting a guilty plea, the trial court must determine that the defendant knowingly, intelligently, and voluntarily entered the plea.[1] In considering whether a criminal defendant knowingly, intelligently, and voluntarily entered a guilty plea, we must review the record to ensure that the trial court complied with the constitutional and procedural safeguards contained within Crim. R. 11.[2]
 {¶ 8} With respect to the required colloquy, Crim. R. 11(C)(2) provides:
 "In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
 "(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
 "(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence. *Page 5 "c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."
 {¶ 9} The trial court is required to explain the constitutional rights set forth in Crim. R. 11(C) to the defendant and determine that the defendant understands those rights.[3] As it pertains to non-constitutional advisements, we review pleas based upon substantial compliance with Crim. R. 11(C).[4] In doing so, we must look to the totality of the circumstances in determining whether a defendant entered his plea knowingly, intelligently, and voluntarily.[5]
 {¶ 10} According to the Supreme Court of Ohio:
 "Where the record affirmatively discloses that: (1) defendant's guilty plea was not the result of coercion, deception or intimidation; (2) counsel was present at the time of the plea; (3) counsel's advice was competent in light of the circumstances surrounding the indictment; (4) the plea was made with the understanding of the nature of the charges; and, (5) defendant was motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both, the guilty plea has been voluntarily and intelligently made."[6] *Page 6 
 {¶ 11} In applying the law to the facts of this case, the transcript reveals that Abualdabat entered his plea with the understanding of the nature of the charges and that the plea was otherwise voluntarily and intelligently made under Piacella.
 {¶ 12} The record reveals that as early as the bond hearing, the trial court was aware that Abualdabat was not fluent in the English language. However, Abualdabat's defense counsel, who was also from the Middle East, indicated that he was fluent in Arabic and he would translate for his client. At the bond hearing, the trial court stated the following:
 "I just want to make sure I'm not making any error here. Mr. El-Kamhawy, by way of example, I've been talking for a minute now, you obviously I think have to pay attention to me and If I ask you a question, you need to figure out what the answer is. It may be sufficient for you, to know, in other words, translate everything that's said by me or Miss Skutnik directly to your client. However, I'm also confident that you have spoken with him before this hearing, that you've given him an idea of what the hearing is about, and that you certainly can speak with him as needed to let him know what is happening."[7]
 {¶ 13} At the change of plea hearing, the following discussion took place:
 "The Court: Mr. El-Kamhawy, If Mr. — if Samer pleads guilty as proposed, are you persuaded that he'd be doing so knowingly, intelligently, and voluntarily? *Page 7 Mr. El-Kamhawy: That is correct, Your Honor. I have discussed this matter with Samer and his family extensively coming to this resolution, to this, today's resolution. He is standing in front of this court not under the influence of any mind-altering drugs or alcohol substances, and he will be entering this plea voluntarily and intelligently."[8]
 {¶ 14} The trial court then proceeded to swear in Abualdabat's defense counsel and then addressed Abualdabat as follows:
 "The Court: Mr. Abualdabat, are you able to speak to Mr. El-
 Kamhawy in Arabic?
 The Defendant: Yeah.
 The Court: Okay. So if I say something you don't understand, you should turn to him and ask him to explain it. Got that?
 The Defendant: All right."[9]
 {¶ 15} Our review of the colloquy which followed between the trial court and Abualdabat at the plea hearing illustrates that the trial court thoroughly addressed Abualdabat, in accordance with Crim. R. 11(C). The record also indicates that Abualdabat understood and affirmatively answered each question posed by the trial court without requesting an explanation from either the trial court or his defense counsel.
 {¶ 16} The record further indicates that as an added precaution, the trial court gave Abualdabat and his defense counsel an opportunity to confer privately with *Page 8 
Abualdabat's uncle, who was present in court and who spoke both English and Arabic fluently. Defense counsel assured the court that he had repeatedly and thoroughly reviewed the case with his client. Likewise, Abualdabat's uncle, Maher Holozadah, addressed the court and indicated that he was confident that Abualdabat understood the consequences of the plea.
 {¶ 17} Based on the record in this case, we conclude that the trial court went to great lengths to comply with the requirements of Crim. R. 11(C) before it accepted Abualdabat's plea, and that his plea was entered knowingly, intelligently, and voluntarily. We further conclude that Abualdabat's constitutional rights were not abridged because he was represented by a qualified attorney, who was also fluent in Arabic, and thus, as an officer of the court was able to safeguard his client's constitutional rights.
 {¶ 18} Finally, in reaching this conclusion, we acknowledge that the better practice is to have an independent interpreter in cases involving language barriers. However, the facts of the instant case do not indicate that Abualdabat was prejudiced by defense counsel also serving as the interpreter. As previously discussed, defense counsel was fluent in Arabic, indicated that he throughly discussed the ramifications of the plea with Abualdabat and his family, assured the court that Abualdabat understood, and that Abualdabat was knowingly, intelligently, and voluntarily entering the plea. Accordingly, we overrule the first assigned error. *Page 9 
 Sentencing {¶ 19} In the second assigned error Abualdabat argues the trial court erred when it imposed a four-year prison term. We disagree.
 {¶ 20} In State v. Foster, [10] the Ohio Supreme Court held that judicial fact-finding to overcome a maximum sentence is unconstitutional in light of Blakely v. Washington.[11] The Foster court severed and excised, among other statutory provisions, R.C. 2929.14(C), because imposing maximum sentences requires judicial fact-finding.[12]
 {¶ 21} "After the severance, judicial fact-finding is not required before a prison term may be imposed within the basic ranges of R.C. 2929.14(A) based upon a jury verdict or admission of the defendant."[13] As a result, "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings and give reasons for imposing maximum, consecutive, or more than the minimum sentence."[14] *Page 10 
 {¶ 22} Thus, post-Foster, we now apply an abuse of discretion standard in reviewing a sentence that is within the statutory range.[15]
 {¶ 23} An abuse of discretion is more than an error in judgment or law; it implies attitude on the part of the trial court that is unreasonable, arbitrary or unconscionable.[16] Furthermore, when applying the abuse of discretion stan-dard, an appellate court may not substitute its judgment for that of the trial court.[17]
 {¶ 24} In Foster, [18] the Ohio Supreme Court held that R.C. 2929.11
must still be followed by trial courts when sentencing offenders. The Court held that R.C. 2929.11 does not mandate judicial fact-finding; rather, the trial court is merely to "consider" the statutory factors set forth in this section prior to sentencing.[19]
 {¶ 25} R.C. 2929.11(A) provides that a trial court that sentences an offender for a felony conviction must be guided by the "overriding purposes of felony sentencing."[20] Those purposes are "to protect the public from future crime by the *Page 11 
offender and others and to punish the offender."[21] R.C. 2929.11(B) provides that a felony sentence must be reasonably calculated to achieve the purposes set forth under R.C. 2929.11(A), commensurate with and not demeaning to the seriousness of the crime and its impact on the victim, and consistent with sentences imposed for similar crimes committed by similar offenders.[22]
 {¶ 26} We have previously held that judicial fact-finding is not required under R.C. 2929.11.[23] Thus, trial courts must merely "consider" the statutory factors before imposing sentence.[24]
Further, a comparison of similar cases is not mandated under R.C. 2929.11(B), as "[e]ach case is necessarily, by its nature, different from every other case just as every person is, by nature, not the same."[25]
 {¶ 27} Here, Abualdabat pleaded guilty to aggravated vehicular homicide, a third degree felony, which carries possible prison terms of one, two, three, four, or five years. The trial court imposed a prison sentence of four years after reviewing the facts of the case, including that the victim's life had been cut short, at age 25, as a result of Abualdabat recklessly driving at a high rate of speed. The trial court also *Page 12 
considered the testimony of the victim's grief stricken family, who indicated that their hopes and dreams died with their son and brother.
 {¶ 28} In addition, the trial court considered Abualdabat's testimony that he considered the victim a brother, and if it were possible, he would trade places with the victim. Further, the trial court heard from Abualdabat's uncle, attorney, employer, and priests, who all testified about Abualdabat's remorse, as well as the devastating impact of the tragedy on both families.
 {¶ 29} Our review of the record indicates that the trial court considered the overriding purposes of felony sentencing. Since the sentence imposed is within the statutory range for Abualdabat's conviction, the trial court followed the statutory process for felony sentencing, and the record is devoid of any evidence of inconsistency or disproportionality, we find that his sentence is supported by the record and not contrary to law.
 {¶ 30} Further, we find no abuse of discretion in the trial court's determination to impose a four-year prison sentence. Accordingly, we overrule the second assigned error.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any *Page 13 
bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, P.J., and CHRISTINE T. McMONAGLE, J., CONCUR
[1] State v. Taylor, 4th Dist. No. 07CA29, 2008-Ohio-484, at ¶ 27.
[2] State v. Young, 4th Dist. No. 06CA10, 2007-Ohio-5232, at ¶ 6.
[3] State v. Ballard (1981), 66 Ohio St.2d 473.
[4] State v. Wilson, Cuyahoga App. No. 91222, 2009-Ohio-731, citingState v. Nero (1990), 56 Ohio St.3d 106.
[5] Id., Nero at 108.
[6] State v. Rice, 6th Dist. No. L-06-1343,2007 Ohio 6529, citing State v. Piacella (1971), 27 Ohio St.2d 92, syllabus.
[7] Tr. at 4-5.
[8] Tr. at 21.
[9] Tr. at 25.
[10] 109 Ohio St.3d 1, 2006-Ohio-856.
[11] (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403.
[12] Id., applying United States v. Booker (2005), 543 U.S. 220,125 S.Ct. 738, 160 L.Ed.2d 621, Blakely, and Apprendi v. New Jersey (2000),530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435.
[13] Id. at ¶ 99.
[14] Foster at paragraph seven of the syllabus; State v. Mathis,109 Ohio St.3d 54, 2006-Ohio-855, at paragraph three of the syllabus.
[15] State v. Kalish, 120 Ohio St.3d 23, 2008-Ohio-4912. See, also,State v. Lindsay, 5th Dist. No. 06CA0057, 2007-Ohio-2211;State v. Parish, 6th Dist. No. OT-07-049, 2008-Ohio-5036; State v.Bunch, 9th Dist. No. 06 MA 106, 2007-Ohio-7211; andState v. Haney, 11th Dist. No. 2006-L-253, 2007-Ohio-3712.
[16] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[17] State v. Murray, 11th Dist No. 2007-L-098,2007-Ohio-6733, citing Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621, 1993-Ohio-122.
[18] 109 Ohio St.3d 1, 2006-Ohio-856.
[19] Id. ______.
[20] State v. McCarroll, Cuyahoga App. No. 89280, 2007-Ohio-6322.
[21] Id.
[22] Id.
[23] See State v. Georgakopoulos, Cuyahoga App. No. 81934, 2003-Ohio-4341.
[24] See Foster.
[25] State v. Wheeler, 6th Dist. No. L-06-1125,2007-Ohio-6375. See, also, State v. Donahue, 6th Dist. No. WD-03-083,2004-Ohio-7161. *Page 1